STATE, Respondent v. STUMES, Appellant

(241 N.W.2d 587)

(File No. 11470. Opinion filed May 6, 1976)

**William J. Janklow**, Atty. Gen., **Marc Weber Tobias**, Asst. Atty. Gen., Pierre, for plaintiff and respondent.

**Joe W. Cadwell, Braithwaite & Cadwell**, Sioux Falls, for defendant and appellant.

COLER, Justice.

Appellant was charged with murder, SDCL 22-16-4, and found guilty of manslaughter in the first degree, SDCL 22-16-16, and he appeals. Appellant asserts as error (1) lack of foundation for admission of certain exhibits; (2) insufficiency of the evidence to support the verdict and (3) failure to suppress admissions against interest made by appellant to police officers.

The information charged that appellant

"on or about the 17th day of September, 1973 in the County of Minnehaha and State of South Dakota aforesaid then and there did wilfully, unlawfully, feloniously, without authority of law and with a

premeditated design to effect the death of one Joyce Hoff, a human being, did kill the said Joyce Hoff, and the said Defendant did then and there, and by said means, commit the crime of murder in violation of the provisions of SDCL 22-16-4 * * *."

The victim in this case was found lying on her back on the floor beside her bed in her apartment during the noon hour on Monday, September 17, 1973. When discovered the body of the victim was clad in a shorty nightgown and covered with a blanket. The county coroner of Minnehaha County, a pathologist, performed an autopsy on the body at approximately 1:45 p.m. on September 17, 1973. His external examination revealed a bruise on the victim's right cheek and cuts on the bridge of her nose and on her lips. Further examination revealed that a finely ribbed, plastic-type, spray can top, some one and three-fourths inches in diameter and in length, had been forced into the victim's vagina. The coroner concluded that the cause of death was not natural but was caused from a lack of oxygen, either anoxia or asphyxiation. There were no visible marks of strangulation nor were there any material signs of struggle in the apartment. The coroner determined that the victim had had intercourse at some time between midnight and 2:00 a.m. prior to her death. He took samples of hair from the head and pubic areas of the decedent. Hairs from various portions of appellant's body, secured under a warrant, and pubic hair which was found to have adhered to the dried blood at the corner of the victim's mouth and certain other hairs which were discovered beneath the victim on her left buttocks were forwarded to the F.B.I. laboratory in Washington, D.C. for comparison.

■Appellant has challenged the chain of evidence in respect to the handling of these exhibits at the F.B.I. laboratory. We have reviewed the record and find the showing of the chain of custody in the process used by the F.B.I. laboratory was sufficient to justify the admission in evidence of the challenged exhibits under the standards enunciated by the court in State v. Christmas, 1968, 83 S.D. 506, 162 N.W.2d 125, and determine that that challenge is without merit.

Pursuant to the instructions given and to which no objection was made, the jury returned a verdict of guilty of manslaughter in the first degree. The instructions given, including one on the lesser included offense, manslaughter in the second degree, were essentially the text of South Dakota Pattern Jury Instructions (Criminal) 3-7-320, 3-7-320a, 3-7-320b, 3-7-320d and 3-7-320e, which are, as indicated in the notes accompanying the pattern instructions, statements gleaned from statute, SDCL 22-16-16, and decisions of this court. Appellant takes the position that the evidence adduced in the trial is not sufficient to sustain a conviction under the language of the instruction.

The particular instruction which is meaningful for the purpose of our decision since it instructs on the law, particularly SDCL 22-16-16, is Instruction No. 14 reading as follows:

"14.

"The phrase 'in a cruel and unusual manner' as used in our law defining manslaughter in the first degree means that the commission of the homicide must be done with some excess of cruelty or refinement or unusual cruelty under the circumstances sufficiently marked to approach barbarity and to make it especially shocking, and the unusual character of the manner displayed in the killing must stand out as sufficiently unusual and unique or peculiar as to astonish and shock persons of normal sensibilities."

This instruction, the verbatim text of South Dakota Pattern Jury Instructions (Criminal) 3-7-320e, has as its genesis a statement appearing in State v. Lange, 1967, 82 S.D. 666, 152 N.W.2d 635, which, in turn, borrowed from both State v. Knoll, 1905, 72 Kans. 237, 83 P. 622 and State v. Diggs, 1965, 194 Kan. 812, 402 P.2d 300, and from decisions of the New York courts, namely, People v. Vollmer, 1949, 299 N.Y. 347, 87 N.E.2d 291 and People v. Lee, 1950, 300 N.Y. 422, 91 N.E.2d 870. An analysis of these cases and on the other extreme, State v. Zemina, 1973, 87 S.D. 291, 206 N.W.2d 819 and State v. Pickering, 1973, 87 S.D. 331, 207 N.W.2d 511, points up that in each case the cause of death and the means

by which the act was accomplished were clearly identifiable and involved, under varying circumstances, provocation and physical combatants. The facts of those cases we do not find controlling in this case.

Research of comparable law reveals that our vintage law, SDCL 22-16-16, carried forward from territorial days beginning in Penal Code of 1877, § 250 and remaining unchanged, has had occasion to be construed by the courts of this state more frequently than like statutes of other states which have been abandoned for newer and more definitive classifications of homicide.[1]

While, contrary to his counsel's advice, appellant took the stand and related to the jury the series of events that led up to his presence in the decedent's apartment throughout the early morning hours of the day of her death, the jury need not have believed his version. He testified to having intercourse with the decedent with her consent and then, in a drugged sleep, having been unaware, except for momentary wakefulness, that someone must have entered the apartment and killed Joyce Hoff. Both the version he presented to the jury and to the officers during interrogation would account for hair of characteristic like his own being found on the body of Ms. Hoff. His admissions that he had struck and choked the decedent with his hands does not explain her death as the coroner found no bruise marks on the neck which indicated to him that strangulation, which was the apparent cause of death, was accomplished by use of a cloth or like material which left no discernible mark.

The instruction properly set forth the law. The means used to cause death by strangulation and the duration and extremity of the assault upon the decedent might well be found by a jury to have been cruel and unusual, and indeed, inhuman, in fact. Hence, the trial court was correct in submitting that phase of the issue to the jury. People v. Lee, supra.

---

1.   See N.D.C.C. § 12-27-17(2), repealed by Ch. 116, § 41, Session Laws of 1973, cf. N.D.C.C. § 12.1-16-02; K.S.A. § 21-411, repealed, L.1969, Ch. 180, § 21-4701, cf. K.S.A. § 21-3203; N.Y. Penal Law of 1909, § 1050, repealed, L.1965, Ch. 1030, § 2, cf. N.Y. Penal Law §§ 125.20, 125.25 (McKinney 1975).

Appellant's remaining claim is that certain admissions given by him to detectives of the Sioux Falls Police Department, Sergeant Green and Chief of Detectives Skadsen, while he was in their custody both in jail in Wisconsin and as a passenger in a motor vehicle with three law enforcement officers on the return trip to Sioux Falls from Wisconsin, were improperly admitted by the trial court. In keeping with State v. Thundershield, 1968, 83 S.D. 414, 160 N.W.2d 408 and State v. Kiehn, 1972, 86 S.D. 549, 199 N.W.2d 594, the trial court held a full evidentiary hearing on the suppression motion. The testimony at this hearing covers some 160 pages of the transcript and includes that of both officers to whom the admissions were made and appellant himself as to the circumstances which brought about the challenged admissions. As stated in State v. Thundershield, supra, and reiterated in State v. Kiehn, supra,

> " * * * it was the province of the judge to consider, reconcile any differences and decide therefrom if the [admissions], beyond a reasonable doubt, [were] voluntarily made under Miranda guidelines. As with other decisions of a trial court, we consider the evidence in the light most favorable to support it."

It would be impractical to detail the evidence produced at the suppression hearing but the essential facts before the trial court were that appellant was taken into custody in Green Bay, Wisconsin, on or about September 27, 1973, on unrelated felony charges pending in Minnehaha County, South Dakota. The two Sioux Falls detectives, previously named, and a Minnehaha County deputy sheriff went from Sioux Falls to Green Bay to return appellant to South Dakota.

Appellant was represented by an attorney from Sioux Falls employed by his mother to represent him in the pending felony charges. No charges had been filed against appellant for murder although the officers acknowledged that he was a suspect. The attorney who had been hired to represent appellant advised one of the detectives that he had been in telephone contact with appellant in Wisconsin and that he had advised appellant not to talk, but "that if he [the appellant] did there was

nothing he [the attorney] could do about it."[2] On the morning of October 1, 1973, appellant was questioned for approximately one and one-half hours and again for approximately one-half hour in the afternoon in facilities provided by the Brown County, Wisconsin, sheriff's office. Officer Green's testimony, supported by Officer Skadsen, was to the effect that during the morning interrogation appellant had been given the *Miranda* warnings and that appellant had acknowledged that he understood those rights. During that same period, appellant admitted that he had been in the decedent's apartment the night of her death but made no admissions relative to his complicity in a crime. Later in the morning, in response to a question as to whether he would take a polygraph test he replied that he would not answer that question until he had talked to his attorney. The interrogation ceased at that point.

The two officers returned to the jail late that afternoon and continued questioning without restating the *Miranda* warnings. Before the close of the afternoon questioning, Officer Green asked appellant if the death of Joyce Hoff was accidental or deliberate and appellant answered that it was accidental. Thereupon appellant stated he did not want to answer any further questions until he had talked to his attorney and no further conversation occurred that afternoon. On the return trip by car, after a restatement to appellant of his *Miranda* warnings, he

---

2.  We have also considered in this connection appellant's contention that since an attorney had been retained, albeit on other charges, the officers were barred from questioning appellant as a murder suspect. The logic of that position we cannot accept as comporting to the purposes of South Dakota Constitution Article VI, § 9 or as required by Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. We recognize the ultimate threat of such a holding in favoring those with means to retain counsel over those less fortunate. United States v. Masullo, 1973, 2 Cir., 489 F.2d 217, and agree with the New York court that, as here, where counsel had not been employed for the murder charge not then pending, that:
    "once the police learn that an attorney has entered *the proceeding*, it is offensive to our system of justice, in the absence of a waiver, to permit further questioning by representatives of the People. Implicit in this rationale is the concept that the rule does not obtain unless and until the police or prosecutor learn that an attorney has been secured to assist the accused *in defending against the specific charges for which he is held*. It is, therefore, of no consequence that the law enforcement officials involved herein learned that an attorney had been assigned at the arraignment on the robbery charge since this attorney was in no way connected with the instant criminal proceeding." People v. Taylor, 1971, 27 N.Y.2d 327, 318 N.Y.S.2d 1, 266 N.E.2d 630.

began sobbing in the back seat and made the statement that "Taking a human life is so useless." Subsequently, appellant recited some, but not all, of the events which took place leading up to the death of Joyce Hoff. In response to a question of whether or not he would sign a confession upon his return to Sioux Falls, he stated that he would and when advised by the officers that his attorney would probably advise him not to, appellant was quoted as saying he "didn't give a damn what his attorney said; he could talk to anybody he wanted to." After being booked into the Minnehaha County jail, appellant called Captain Skadsen back to his cell and stated to Skadsen, in the presence of Green, "I want you to know that the death of Joyce [Hoff] was an accident. I'm not a vicious killer."

Appellant, although not denying he was given his statement of rights on two occasions, insisted that he had smuggled on his person some L.S.D. tablets and that at all times material to his being questioned had been taking one or two hits, tending to refute his being in a position to understand his rights or to exercise those rights intelligently.

At the conclusion of the evidentiary hearing the trial court denied from the bench appellant's motion to suppress the admissions. No formal order was entered as contemplated by RCP 7(b) (SDCL 15-6-7(b)). Neither the state nor appellant has challenged the lack of a "decision" on this motion. It is abundantly clear, however, that absent the necessary findings of fact and conclusions of law which make up a "decision," RCP 52(a); Bunnell v. Kindt, 1968, 83 S.D. 377, 159 N.W.2d 923, this court's review is seriously hampered, if not made impossible, because of the inability of this court to determine the credibility of the witnesses which determination is within the purview of the trial court before whom the witnesses appeared.

Under the authority of SDCL 15-26-26 and 15-30-2 and the precedent established by State v. Faller, 1975, 88 S.D. 685, 227 N.W.2d 433, we may remand for further proceedings. To the same effect see State v. Iowa Dist. Court in & for Linn Cty., 1975 Iowa, 236 N.W.2d 54.

The total lack of findings of fact and conclusions of law in the present case causes us to remand this case for a determination of the factual issue upon the evidence previously adduced.[3]

█ If any of the admissions admitted into evidence are found to have been involuntary from the "totality of the circumstances," State v. Adkins, 1975, 88 S.D. 571, 225 N.W.2d 598,[4] a new trial shall be granted, but if all such statements admitted as evidence are found to be voluntary, the judgment shall be affirmed. In either event the trial court shall make the "determination," as suggested by this court in State v. Thundershield, supra, reiterated more explicitly in State v. Kiehn, supra, and which we now hold is required. The determination requiring the entry of findings of fact and conclusions of law we equate with a "decision."

The cause is accordingly remanded for further proceedings.

DUNN, C. J., and WINANS and WOLLMAN, JJ., concur.

---

3.    This court as well as the trial court must be wary of a mistaken construction of Westover v. United States, or Miranda v. Arizona, 1966, both reported at 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 as was credited to the Michigan courts in Michigan v. Mosley, 1975, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313.

Although apellant took the stand, there was no attempt made in this case to use the inculpatory statements for impeachment purposes. The admissions were used in the prosecution's case in chief so there is no factual setting here comparable to that found in Oregon v. Hass, 1975, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570, which should occasion either this court or the trial court to impose greater restrictions on police activity than those the United States Supreme Court holds to be necessary under federal constitutional standards. Oregon v. Hass, supra.

In connection with this remand the trial court must consider the similarity of facts in the present case to those reflected in Williams v. Brewer, 8 Cir., 509 F.2d 227, cert. granted, 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404, 1975, and as a further corollary in that case, the role that the trial court's findings of fact and conclusions of law have on appeal.

4.    It should be observed, as it was in Lego v. Twomey, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618, that this court has adopted a strict standard of proof in this type of proceeding. We have said, by way of suggested procedure, that "[w]hen a confession or an incriminating statement allegedly made by the accused is offered by the prosecution and objected to, *the state has the burden of proving beyond a reasonable doubt the same was freely and voluntarily made."* (emphasis supplied) State v. Thundershield, 1968, 83 S.D. 414, 160 N.W.2d 408, see also State v. Kiehn, 1972, 86 S.D. 549, 199 N.W.2d 594. Whether a less strict standard should be applied in light of recent developments in the law, we have not been asked to decide.