STATE of South Dakota, Plaintiff
and Appellee,

v.

Dennis LUFKINS, Defendant
and Appellant.

No. 13212.

Supreme Court of South Dakota.

Argued March 24, 1981.

Decided Aug. 19, 1981.

HENDERSON, Justice.

## ACTION

This is an appeal by Dennis Lufkins, appellant, from a judgment of conviction of first-degree manslaughter and a separate adjudication of habitual criminality. A Roberts County jury found appellant guilty of the manslaughter charge; appellant subsequently pled guilty to being a habitual criminal. His sentence was life imprisonment. Four separate issues, all treated below, are presented for review. We affirm.

## FACTS

At trial, Ernest Hayes, Eugene Hedine and Matthew Blue Dog all testified that they, appellant, Ruth Titus, and the victim Sylvester Johnson had been drinking wine and rubbing alcohol at Hayes' residence on December 4, 1979. Testimony also indicated that a fight occurred between the victim and appellant resulting in appellant striking the victim on the head with an ax handle, causing him to fall. Hayes was in the process of taking the victim to the hospital by car when, believing that the victim had died en route, he pulled the victim out of the car and left him on a nearby church lawn. However, the sister of appellant, Faith Lufkins, testified that appellant had been at her home all day on December 4, 1979, and the morning of December 5, 1979.

The body of the victim was discovered on December 5, 1979, the cause of death being a subdural hemotoma (brain hemorrhage). It was determined that the victim's blood at the time of death contained 0.31 percent alcohol.

Mikal Hanson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen. and Mark W. Barnett, Asst. Atty. Gen., Pierre, on brief.

Kay F. Nikolas of Dakota Plains Legal Services, Sisseton, for defendant and appellant.

## PROCEDURAL FACTS

January 22, 1980: Appellant commenced serving a sixty-day jail sentence for second offense D.W.I.

January 31, 1980: Appellant made and signed an inculpatory statement in the presence of law enforcement authorities regarding the victim's death.

February 8, 1980: Appellant was arrested and arraigned for first-degree manslaughter.

March 7, 1980: A preliminary hearing was held on the first-degree manslaughter charge, at the conclusion of which appellant was bound over for trial.

April 21, 1980: Appellant was arraigned on both the first-degree manslaughter and habitual criminal information, whereat appellant pled not guilty to both charges. A jury trial was then set for June 2, 1980.

June 2, 1980: After the commencement of a jury trial, appellant pled guilty to first-degree manslaughter thus aborting the trial.

June 12, 1980: Appellant was permitted to withdraw his guilty plea; also, appellant moved for a change of venue.

June 23, 1980: A hearing was held whereat the trial court denied appellant's change of venue motion; the court further determined that appellant had been legally detained when he made his inculpatory statement on January 31, 1980.

June 30, 1980: Trial commenced which resulted in a jury verdict and judgment of conviction against appellant on the charge of first-degree manslaughter.

July 7, 1980: Appellant moved for a mistrial; this motion was denied. Appellant's trial attorney was then permitted to withdraw as counsel and present counsel was appointed.

July 15, 1980: Appellant pled guilty to being a habitual criminal and was sentenced to life imprisonment.

## ISSUES

### I.

Under the facts of this case, was appellant denied due process by the admission into evidence of his incriminating statement without a prior independent hearing on the voluntary nature of the statement? We hold that he was not.

### II.

Was appellant prejudiced by the trial court's lack of compliance with SDCL 23A–4–3? We hold that he was not.

### III.

Did the trial court abuse its discretion by denying appellant's motion for a new trial? We hold that it did not.

### IV.

Did the trial court err by denying appellant's motion for a change of venue? We hold that it did not.

### V.

Was appellant denied his right to effective assistance of trial counsel? We hold that he was not.

## DECISION

### I.

■ Appellant contends that he was denied due process due to the admission of an incriminating written statement into evidence at trial without a prior determination of its voluntary nature. The statement in question is an acknowledgment and waiver of appellant's applicable constitutional rights and a confession to striking the victim with an ax on December 4, 1979. This statement was taken and signed by appellant on January 31, 1980, at the sheriff's office in Sisseton, South Dakota, at 11:30 a. m. in the presence of Sheriff Neil Long and D.C.I. Officer Delbert Peterson. After Sheriff Long was extensively questioned in the presence of the jury by both the state and appellant regarding the voluntary nature of the statement, the trial court admitted the statement into evidence, over appellant's objection. Essentially, Sheriff Long testified that appellant understood his statement and the ramifications thereof, and was not threatened, tricked, or coerced into signing it. As outlined in the procedural facts, the trial court ruled on June 23, 1980, that appellant was not being illegally detained when the statement was made.

This Court held in *State v. Thundershield,* 83 S.D. 414, 422, 160 N.W.2d 408, 412 (1968):

> When a confession or an incriminating statement allegedly made by the accused is offered by the prosecution and objected to, the state has the burden of proving beyond a reasonable doubt the same was freely and voluntarily made. This proof must be made in an independent hearing of all relevant facts outside the presence of the jury.

This holding was reiterated in *State v. Kiehn,* 86 S.D. 549, 199 N.W.2d 594 (1972); *see also State v. Landers,* 21 S.D. 606, 114 N.W. 717 (1908).

During the questioning of Sheriff Long by the state, appellant made no objection pertaining to the jury's presence. At the conclusion of his cross-examination of the sheriff, appellant objected to the statement's admission due to its alleged involuntary nature. Appellant's objection was overruled by the trial court.

In *State v. Stumes,* 90 S.D. 382, 241 N.W.2d 587 (1976), we remanded the case to the trial court for the purpose of entering findings of fact and conclusions of law with regard to the voluntariness of certain admissions made by the defendant. The trial court had originally allowed the admissions into evidence (subsequent to a suppression hearing) without entering a formal order thereon. *Stumes,* however, is inapposite. *Stumes* involved a motion to suppress; here there was only a verbal objection to the admission of the statement into evidence. Appellant's objection, which occurred after the applicable evidence was produced, is quite different from an objection to procedure which occurs prior to the production of any evidence. Given this procedural variance, the result reached in *Stumes* is not controlling.

Although the voluntariness of appellant's statement was determined in the jury's presence contra to the requirements of *Thundershield,* we must defer to the United States Supreme Court ruling in *Pinto v. Pierce,* 389 U.S. 31, 33, 88 S.Ct. 192, 193–4, 19 L.Ed.2d 31, 33 (1967) (footnotes omitted) wherein it was stated:

A confession by the defendant found to be involuntary by the trial judge is not to be heard by the jury which determines his guilt or innocence. Hence, because a disputed confession may be found involuntary and inadmissible by the judge, it would seem prudent to hold voluntariness hearings outside the presence of the jury. In this case, however, the confession was held voluntary and admitted as evidence suitable for consideration by the jury. In addition, there is no claim that because the hearing was held in the presence of the jury it was inadequate or had any other unfair consequences for the respondent.

Finally, it is clear that the respondent in this case did not object to having the voluntariness of his admission considered in the presence of the jury. At his trial the court asked defense counsel whether there was any objection to the testimony being taken in the presence of the jury. Defense counsel replied, "None whatsoever." The court continued, "As you know, it can be taken in their presence or outside of their presence, and that is a matter of discretion with the Court but I am inquiring of you if you have any objections. If you did I would hear you but I assume you have none." Again counsel replied, "I have none." The evidence regarding voluntariness, which included testimony by respondent, was then taken, after which the court ruled that the statement was voluntary.

Since trial counsel consented to the evidence on voluntariness being taken in the presence of the jury, and the judge found the statement voluntary, respondent was deprived of no constitutional right.

In the instant case, the trial court, by allowing the statement into evidence, impliedly ruled that it was given voluntarily. By not making the appropriate objection, appellant's trial counsel consented to the taking of evidence in the jury's presence on the voluntariness of the statement.* More-

---

* The U.S. Supreme Court has recently declined to rule that a defendant has a per se due process right to an independent hearing on the issue of a statement's voluntariness. *Watkins v. Sowders,* 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981).

over, we note that the jury was not instructed to determine the voluntariness of the statement; rather, the trial court made this determination.

We hold that our decision in *Thundershield* is hereby qualified in accord with the provisions of *Pinto v. Pierce*, supra. As such, we also hold that appellant was not denied his constitutional rights by the admission of the statement into evidence.

## II.

Appellant secondly contends that the trial court's failure to comply with SDCL 23A–4–3 constituted prejudicial error. SDCL 23A–4–3, South Dakota's counterpart to Fed.Rule 5(c), provides in pertinent part:

A defendant is entitled to a preliminary hearing, unless waived, when charged with an offense for which the maximum penalty exceeds a jail sentence of thirty days or a fine of one hundred dollars or both such fine and imprisonment. . . . The hearing shall be held within a reasonable time, but in any event not later than ten days following the initial appearance if the defendant is in custody, and not later than forty-five days if he is not in custody. . . . In the absence of consent by the defendant, time limits may be extended by the committing magistrate only upon a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice.

Appellant was initially arraigned on February 8, 1980, and his preliminary hearing occurred March 7, 1980.

■ The right to a preliminary hearing is not of constitutional origin, but is rather a creature of statute. *State v. Reggio*, 84 S.D. 687, 176 N.W.2d 62 (1970); *State v. Roth*, 84 S.D. 44, 166 N.W.2d 564 (1969). To warrant a reversal or dismissal of the case, appellant must show he was prejudiced by the delay in obtaining a preliminary hearing. *State v. Warner*, 86 N.M. 219, 521 P.2d 1168 (1974).

■ Appellant claims that he was prejudiced by the delay due to the death of Laverne Black Thunder, who appellant claims was a potential alibi witness. At trial, Faith Lufkins testified that Laverne Black Thunder and his wife, Carolyn, had given appellant a ride to Ms. Lufkins' residence on December 4, 1979. Ms. Lufkins also testified that Laverne Black Thunder had died since appellant was charged with first-degree manslaughter, although she did not know exactly how or when. Carolyn Black Thunder did not testify at any time during the proceedings below.

We do not believe that appellant was prejudiced by the delay in receiving a preliminary hearing for the following reasons: First, during the delay, appellant was otherwise incarcerated due to an unrelated sixty-day jail sentence which commenced on January 22, 1980. Second, there is no indication that a timely preliminary hearing would have preserved the testimony of Laverne Black Thunder since his date of death is unknown. Finally, assuming arguendo that Laverne Black Thunder would have testified as an alibi witness at appellant's preliminary hearing, the cumulative testimony of several other witnesses would still have warranted that appellant be bound over for trial. Thus, we hold that no prejudicial error was created by the trial court's lack of compliance with SDCL 23A–4–3.

## III.

■ Third, appellant maintains that the trial court erred by denying his motion for a new trial. SDCL 23A–29–1 provides in pertinent part: "A court on motion of a defendant or upon its own motion may grant a new trial if required in the interest of justice." A motion for a new trial will not be granted absent a showing that there is newly discovered evidence which was unavailable at trial despite diligent efforts to procure the same. *State v. Laper*, 26 S.D. 151, 128 N.W. 476 (1910). There must also be a showing that substantial rights of the defendant have been prejudiced. *State v.*

*Kaseman,* 273 N.W.2d 716 (S.D.1978). The test for determining if a motion for new trial based on newly discovered evidence should be granted is twofold: (1) Is the evidence cumulative; and (2) is there a reasonable possibility that the newly discovered evidence would probably produce a different result on retrial. *State v. Dowling,* 87 S.D. 532, 211 N.W.2d 572 (1973). Finally, the granting or denial of a motion for a new trial is solely within the discretion of the trial court and will not be interfered with on appeal unless such discretion is abused. *State v. Martinez,* 88 S.D. 369, 220 N.W.2d 530 (1974).

██ Appellant argues he was entitled to a new trial due to the unavailability of a witness, Carolyn Black Thunder, at the time of trial. At the hearing on the motion for a new trial, appellant's counsel stated that Ms. Black Thunder would have testified that she and her late husband, Laverne Black Thunder, had taken appellant to the home of Faith Lufkins during the evening of December 4, 1979, and that they saw him again at the Lufkins residence the morning of December 5, 1979. This testimony would have been consistent with the testimony of Faith Lufkins. Apparently, Ms. Black Thunder was on an Indian reservation during, and prior to, trial; there is no indication that she was subpoenaed.

As evidenced by appellant's counsel's remarks at the hearing on the new trial motion, appellant knew of Ms. Black Thunder's potential testimony substantially prior to trial; hence, it can hardly be considered newly discovered evidence. Further, the testimony of Ms. Black Thunder would not have provided an alibi for appellant since the incident occurred at approximately 10:00 p. m. on December 4, 1979, and Ms. Black Thunder's testimony would not have entailed appellant's whereabouts at that particular time. Also, Ms. Black Thunder's testimony would have been cumulative in light of the testimony of Faith Lufkins.

Appellant maintains that compulsory process should have issued for the attendance of Ruth Titus. We fail to find prejudicial error in this regard as the record discloses that neither party knew of her whereabouts or the nature of her testimony. With these considerations in mind, we hold that the trial court did not abuse its discretion by denying appellant's motion for a new trial.

## IV.

██ Appellant contends that the trial court erred in denying his request for a change of venue. SDCL 23A–17–5 states:

A court upon motion of a defendant shall transfer his proceedings to another county if the court is satisfied that there exists, in the county where the prosecution is pending, so great a prejudice against the defendant that he cannot obtain a fair and impartial trial at any place fixed by law for holding court in that county.

Here, appellant orally stated (not under oath) to the trial court during the hearing of June 23, 1980, that he did not think he could get a fair trial in Roberts County due to rumors he had heard while incarcerated. There was no evidence presented with regard to any pre-trial publicity, nor were any affidavits submitted. The juries at both the June 2, 1980, and June 30, 1980, trials were selected without difficulty.

Generally, a motion for a change of venue must be accompanied by affidavits or other evidence in the record. *State v. Scott* and *Eckerd,* 84 S.D. 511, 173 N.W.2d 287 (1969), cert. denied 400 U.S. 821, 91 S.Ct. 39, 27 L.Ed.2d 49 (1970). Even when an affidavit by defense counsel was submitted indicating reasons why a change of venue motion should be granted, this Court ruled that the motion was properly denied since the affidavit only contained conclusions and unsupported assertions. *State v. Williamson,* 86 S.D. 485, 198 N.W.2d 518 (1972). *See also State v. Husman,* 66 S.D. 530, 287 N.W. 30 (1939). We hold that the trial court did not err by denying appellant's change of venue motion.

## V.

██ Finally, appellant argues that he was denied his right to effective assistance

of trial counsel guaranteed him under art. VI, § 7 of the South Dakota Constitution and the Sixth Amendment of the United States Constitution. Initially, we note that in *State v. McBride*, 296 N.W.2d 551 (S.D. 1980), this Court expressed its preference for post-conviction relief as a prerequisite means of initially adjudicating claims of ineffective assistance of counsel. Our recent recognition of the plain error rule in *State v. Brammer*, 304 N.W.2d 111 (S.D. 1981), however, precludes this prerequisite in exceptional circumstances when a litigant's rights are substantially affected. *See* SDCL 23A–44–15; SDCL 19–9–6.

In the instant case, we have carefully reviewed the particulars which appellant contends indicate the ineffectiveness of his trial counsel and conclude that appellant was not denied his constitutional right to effective counsel.

Affirmed.

WOLLMAN, C. J., and DUNN, J., concur.

MORGAN and FOSHEIM, JJ., dissent.

FOSHEIM, Justice (dissenting).

In my opinion the defendant was denied his constitutional rights by the admission into evidence of his incriminating statement.

In *Pinto v. Pierce*, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967), the court held that a defendant's constitutional rights were not violated when a voluntariness hearing was held within the presence of the jury since: (1) the defendant's trial counsel consented to such procedure; and, (2) the trial judge found the admission(s) voluntary. This is a narrow holding and not applicable to the facts of the case before us.

The United States Supreme Court stressed in *Pinto* the fact that the defense counsel, after pointed questioning by the trial court, gave his express consent *twice* to the issue of voluntariness being tried in the presence of the jury. In light of the fundamental constitutional rights at stake here, and the defendant's claim that he was represented by incompetent counsel (which claim appears to have merit), I cannot agree

with the majority that a failure to request a voluntariness hearing outside the presence of the jury is the same as expressly consenting to such a hearing in the jury's presence. A fair reading of *Pinto* does not qualify *State v. Thundershield*, 83 S.D. 414, 160 N.W.2d 408 (1968), to this extent.

I cannot agree with the majority's conclusion that when the trial court admitted the defendant's statement into evidence it "impliedly ruled" the statement was voluntary. Both *Pinto* and *Thundershield* are rooted in the United States Supreme Court decision of *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), which granted a defendant the right to have the issue of voluntariness decided solely by the court. The *Jackson* court stated:

The procedures used in the trial court to arrive at its conclusions on the coercion issue progressively take on added significance as the actual measure of the protection afforded a defendant under the Due Process Clause of the Fourteenth Amendment against the use of involuntary confessions. These procedures must, therefore, be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend.

378 U.S. at 391, 84 S.Ct. at 1788, 12 L.Ed.2d at 924.

This requirement of a clear-cut determination based on findings of fact has not been obviated by *Pinto, Thundershield*, or any other case I have read on this issue. In fact, this court, in *State v. Stumes*, 90 S.D. 382, 241 N.W.2d 587 (1976), stated that its review of the defendant's claim that certain incriminating statements were improperly admitted by the trial court was "seriously hampered, if not made impossible" by the failure of the trial court to make a determination on the issue of voluntariness. *Id.*, 241 N.W.2d at 591. In *Stumes* we did not infer a favorable finding from the trial court's admission of the incriminating statement into evidence. We remanded *Stumes* for findings of fact and conclusions of law

on the voluntariness issue, ordering a new trial if the admission was found to be involuntary, or an affirmance if the admission were found voluntary. In *Stumes* we concluded:

> In either event the trial court shall make the 'determination,' as suggested by this court in *State v. Thundershield, supra,* reiterated more explicitly in *State v. Kiehn, supra, and which we now hold is required.* The determination requiring the entry of findings of fact and conclusions of law we equate with a 'decision.'

*Id.,* 241 N.W.2d at 592 (emphasis added).

The majority states that *Stumes* is not controlling because the defendant in *Stumes* made a motion to suppress while in this case there was only a verbal objection to admission of the statement into evidence. This procedural distinction is irrelevant. In *Jackson* the court stated: "Equally clear is the defendant's constitutional right at some stage in the proceedings to *object* to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession." 378 U.S. at 377, 84 S.Ct. at 1780–1781 (citation omitted) (emphasis added).

The *Pinto* decision predates our *Thundershield* decision which makes me question the majority statement that *Pinto* qualified *Thundershield.* I believe this court correctly decided *Thundershield* and that its requirement that suppression hearings *must* be made in an independent hearing should stand. My reasons for adhering to *Thundershield* are well stated in Justice Fortas' concurrence in *Pinto* and in *Jackson* at 389 n. 16, 84 S.Ct. at 1787 n. 16.

Accordingly, since the defendant was not afforded a suppression hearing that complied with the requirements of *Thundershield* and *Stumes,* I would remand for such a hearing. A new trial should be ordered if the defendant's admission is found involuntary, or his conviction affirmed if his admission is found voluntary.

I am authorized to state that Justice MORGAN joins in this dissent.