Norman STUMES, Applicant
and Appellant,

v.

Lynn DELANO, Acting Warden, South
Dakota State Penitentiary, Respondent
and Appellee.

No. 18004.

Supreme Court of South Dakota.

Considered on Briefs April 20, 1993.

Decided Nov. 3, 1993.

Julie Irvine, Minnehaha County Public Defender, Sioux Falls, for applicant and appellant.

Mark Barnett, Atty. Gen., Sherri Sundem Wald, Asst. Atty. Gen., Pierre, David O. Carter, Sp. Asst. Atty. Gen., Sioux Falls, for respondent and appellee.

BERNDT, Circuit Judge.

## FACTS

On March 23, 1974, Norman Stumes (Stumes) was adjudicated guilty by a jury of first degree manslaughter in the September 17, 1973, strangulation death of Joyce Hoff (Hoff). On March 27, 1974, Stumes was sentenced to life in prison.

Stumes' procedural history can be seen in *State v. Stumes*, 241 N.W.2d 587 (S.D.1976); *Stumes v. Solem*, 511 F.Supp. 1312 (1981); *Stumes v. Solem*, 671 F.2d 1150 (8th Cir. 1982); *In re Stumes*, 681 F.2d 524 (8th Cir. 1982); *Solem v. Stumes*, 463 U.S. 1228, 103 S.Ct. 3568, 77 L.Ed.2d 1409 (1983); *Solem v. Stumes*, 464 U.S. 808, 104 S.Ct. 57, 78 L.Ed.2d 75 (1983); *Solem v. Stumes*, 465

U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984); *Stumes v. Solem,* 752 F.2d 317 (8th Cir.1985); and *Stumes v. Solem,* 471 U.S. 1067, 105 S.Ct. 2145, 85 L.Ed.2d 502 (1985).

On April 7, 1989, Stumes filed an application for writ of habeas corpus challenging the legality of his incarceration on the manslaughter conviction on the basis of:

1. Failure to prove "heat of passion"

2. Ineffective assistance of counsel

On September 25, 1991, Stumes sent a letter to the South Dakota Board of Pardons and Paroles, requesting a parole eligibility date pursuant to SDCL 23–60–4, which was repealed in 1978. The request was denied on December 31, 1991, with a certificate of service to Stumes dated January 28, 1992. Stumes did not appeal from the findings of fact, conclusions of law and order entered.

On May 1, 1992, the habeas court issued findings of fact and conclusions of law and an order denying Stumes' application for habeas corpus relief. Stumes appeals the two issues raised in the April 7, 1989, writ of habeas corpus and the December 31, 1991, refusal of the parole board to set parole eligibility under SDCL 24–15–3. We affirm.

### ISSUES

### ISSUE ONE

WHETHER THE EVIDENCE WAS INSUFFICIENT TO CONVICT PETITIONER OF MANSLAUGHTER IN THE FIRST DEGREE?

### ISSUE TWO

WHETHER PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL?

### ISSUE THREE

WHETHER PETITIONER'S CONSTITUTIONAL RIGHTS UNDER THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION AND THE SOUTH DAKOTA CONSTITUTION HAVE BEEN VIOLATED?

### SUB–ISSUES

DOES THIS COURT HAVE JURISDICTION TO ADDRESS THIS MATTER?

WHETHER PETITIONER'S CONSTITUTIONAL RIGHTS WERE VIOLATED?

### ISSUE ONE

WHETHER THE EVIDENCE WAS INSUFFICIENT TO CONVICT PETITIONER OF MANSLAUGHTER IN THE FIRST DEGREE?

■ At trial, Stumes submitted proposed instructions which included an instruction on first degree manslaughter/heat of passion. Stumes points out that at the time of trial, settled law in the State of South Dakota required jury instructions on first and second degree manslaughter as lesser-included offenses of murder.

As manslaughter is distinguished into first and second degrees and included in the charge of murder, the jury had the legal right to convict the accused of either of such lesser offenses, the degree of which must be found, and it was therefore insufficient and erroneous to instruct as to manslaughter in the first degree without defining the second degree of that crime.

*State v. Hubbard,* 20 S.D. 148, 150, 104 N.W. 1120, 1121 (S.D.1905).

At the time of Stumes' trial, the manslaughter statutes in effect were as follows:

SDCL 22–16–15 [As of 1974]. **Manslaughter in first degree—Killing during commission of misdemeanor.**—Homicide is manslaughter in the first degree when perpetrated without a design to effect death by a person while engaged in the commission of a misdemeanor involving moral turpitude.

[Amended SL 1976, ch 158, § 16–3; 1977, ch 189, § 41 to]

SDCL 22–16–20 [As of 1974]. **Manslaughter in second degree—All killings not otherwise provided for.**—Every killing of one human being by the act, procurement, or culpable negligence of another which, under the provisions of this chap-

ter, is not murder nor manslaughter in the first degree, nor excusable nor justifiable homicide, is manslaughter in the second degree.

[Amended SL 1976, ch 158, § 16–4; 1977, ch 189, § 42.]

The South Dakota Supreme Court has since formally abandoned the previous line of decisions which held that first and second-degree manslaughter are automatically lesser included offenses within murder. The court has instead gone to a two-part test for lesser-included offenses. *State v. Waff,* 373 N.W.2d 18 (S.D.1985).

The instructions were rejected in their entirety by the trial court. The trial court then entered its own proposed instructions which included the instruction on manslaughter in the first degree as a lesser-included offense of murder.

No objection was made to the instructions. The instructions were essentially the text of South Dakota Pattern Jury Instruction (Criminal) 3–7–320, 3–7–320a, 3–7–320b, 3–7–320d, and 3–7–320e, which were, as indicated in the notes accompanying the pattern instruction, statements taken from statute, SDCL 22–16–16, and decisions of the South Dakota Supreme Court. *Stumes,* 241 N.W.2d at 588.

> SDCL 22–16–16 [As of 1974]. **Heat of passion—Cruel and unusual killing—Use of dangerous weapon.**—Homicide is manslaughter in the first degree when perpetrated without a decision to effect death and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide.

[Repealed by SL 1976, ch 158, § 16–9.]

In *Stumes,* 241 N.W.2d at 588, Instruction No. 14 concerning manslaughter in a "cruel and unusual manner" was challenged and found without merit. Now Stumes challenges Instruction No. 13 concerning "heat of passion":

> The term "heat of passion" as used in these Instructions, which reduces a killing from murder to manslaughter in the first degree, means such sudden passion as was the result of sufficient provocation which as induced by the act of the person slain as amounts to temporary obscurement of reason, and renders a person incapable of forming a premeditated design to kill and which passion continues to exist until the commission of the homicidal act. The heat of passion which will reduce what would otherwise be murder to manslaughter in the first degree is such mental disturbance or condition as would so overcome and dominate or suspend the exercise of the judgment of the defendant as to render his mind for the time being deaf to the voice of reason, making him incapable of forming and executing the distinct intent to take human life essential to murder, and to cause him, uncontrollably, to act from impending force of the disturbing cause rather than from any real wickedness of heart or cruelty or recklessness of disposition. The sufficient provocation must be such as would naturally and reasonably arouse the passion of an ordinary man beyond his power of control.

The defendant does not have the burden of proving that the killing was a result of a "heat of passion." "Heat of passion" negatives intent and the burden is upon the State to prove beyond a reasonable doubt that the killing was with the premeditated design to effect death and was not the result of heat of passion.

Stumes argues that the "no evidence" criteria set out in *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) for habeas corpus proceedings should be set aside and the holding of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) should be adopted. Generally, *Thompson* states that the ultimate question is whether the charges rest upon any evidence at all rather than upon sufficiency of evidence. *Jackson* states that the question is whether there was sufficient evidence to justify a rational trier of fact to find guilt beyond a reasonable doubt.

At trial, Stumes testified that he went over to Hoff's apartment in the early morning on September 17, 1973, to talk to her about Sierri White. Stumes testified that he and White had lived together for about two years; that they had broken up toward the end of August; and that she was living with her parents in Hills, Minnesota. There had been testimony that Hoff and two friends had driven to Hills, Minnesota earlier that same night to visit White. There was also testimony that later in the evening, Stumes had said to acquaintances at a bar where Hoff was present that it was Hoff's fault that he lost White.

Stumes testified that he had broken down emotionally while talking to Hoff in the living room at her apartment. Stumes testified that the two talked further in her bedroom and eventually ended up having sexual intercourse.

While being returned to South Dakota from Wisconsin where he was taken into custody Stumes gave law enforcement officials additional information concerning events that night. Detective Skadsen testified that Stumes said that Hoff threatened to tell White about their sexual activities. Stumes stated that he begged Hoff not to say anything to White. Stumes stated that he became scared that Hoff was going to tell White. Stumes said that he struck Hoff, knocked her off the bed, and then strangled her. The coroner testified that Hoff had injuries which were in keeping with Stumes' admissions to law enforcement. While in jail Stumes told Skadsen, "Please tell them that I didn't mean to kill her, that it was an accident—that I'm not a vicious killer."

The testimony given by Skadsen about statements made by Stumes was challenged as unconstitutional in *Stumes*, 511 F.Supp. 1312, 1324 (1981). The district court held that while it was a close call, the questioning did not violate Stumes' constitutional rights and the statements were admissible. Stumes now claims that there was no testimony or evidence concerning heat of passion or provocation.

First, even without the South Dakota Supreme Court adopting the *Jackson* stan-dard of review for habeas corpus proceedings, the standards have already been twice shown to have been met in Stumes' case. In *Stumes*, 511 F.Supp. at 1324, Stumes claimed that there was insufficient evidence to submit the charge of first degree manslaughter to the jury. The United States District Court found that:

> With respect to petitioner's sufficiency of the evidence claim this Court applied the test set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and finds that any rational trier of fact could have found the petitioner guilty beyond a reasonable doubt.

*See Jackson v. Virginia, The Advent of the Reasonable Doubt Standard in Habeas Corpus Proceedings*, 25 S.D.L.Rev. 372 (1980); *Stumes*, 511 F.Supp. at 1324-5. Also, in *Stumes*, 671 F.2d at 1158, the United States Court of Appeals examined the arguments that certain physical exhibits were unconstitutionally admitted, and that the evidence of first degree manslaughter was so slight as to be constitutionally deficient. The court found the arguments "without merit." *Id.*

Second, SDCL 22–16–16 is an affirmative *defense*. The South Dakota Supreme Court found in *State v. Zemina*, 87 S.D. 291, 206 N.W.2d 819 (S.D.1973) that under state law, matters of excuse and justification were affirmative *defenses* and that there must be support in the evidence for giving such instructions. *Zemina v. Solem*, 438 F.Supp. 455, 466 (1977). Rereading the instruction, "[t]he defendant does not have the burden of proving that the killing was a result of a 'heat of passion.'" Rather, the burden is on the state to prove premeditation and *not* heat of passion.

## ISSUE TWO

### WHETHER PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL?

Stumes argues that appellate counsel was ineffective because the sufficiency of the evidence claim concerning the heat of passion element was not included on the direct appeal.

The South Dakota Supreme Court has held that to succeed on an ineffective assistance of counsel claim, two requirements must be shown:

First, ... that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, ... that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Miller v. Leapley,* 472 N.W.2d 517, 518 (S.D. 1991), (citing *Luna v. Solem,* 411 N.W.2d 656 (S.D.1987)).

█ Sufficiency of evidence was addressed in both the federal district court, *Stumes,* 511 F.Supp. at 1324-5, and the Eighth Circuit Court of Appeals, *Stumes,* 671 F.2d at 1158. In both cases, the reviewing court found the issue to be without merit. Where substantially the same issue was raised on direct appeal as in habeas review, "the principle of res judicata is applicable to proceedings upon habeas corpus." *Miller v. Leapley,* 472 N.W.2d at 519.

## ISSUE THREE

WHETHER PETITIONER'S CONSTITUTIONAL RIGHTS UNDER THE EX POST FACTO CLAUSE OF THE UNITED STATES CONSTITUTION AND THE SOUTH DAKOTA CONSTITUTION HAVE BEEN VIOLATED?

SDCL 23-60-4 [As of 1974]. **Establishing eligibility date—Completion of history— Study to determine advisability of parole—Submission of findings to board.—** Whenever any person becomes an inmate of the penitentiary it shall be the duty of the board of pardons and paroles to immediately establish in their record the date when such inmate will be eligible to parole. Between such dates the board will complete its history in his regard, and shall study the life, habits, previous environment and nature of such defendant to determine the advisability of recommending him for parole when he becomes eligible thereto from the time standpoint. At least ten days prior to the date of eligibility the director shall submit to the board his findings regarding the inmate, and the board shall follow such findings for the parole of such inmate, unless sound reasons appear to the contrary.

[Repealed by SL 1978, ch 186, § 44, effective January 1, 1979.]

SDCL 24-15-3. [Effective January 1, 1979] **Establishment of date of parole eligibility—Completion of history—Director's findings regarding inmate.** Whenever any person becomes an inmate of the penitentiary, the board of pardons and paroles shall immediately establish in its record the date when the inmate will be eligible for parole. Between such dates the director shall complete the history of the inmate and shall study the life, habits, previous environment and nature of the inmate to determine the advisability of recommending him for parole when he becomes eligible. At least ten days prior to the date of eligibility the director shall submit to the board his findings regarding the inmate.

SDCL 23-60-15 [As of 1974]. **Minimum duration of parole under life sentence.—** Until a convict serving a life sentence has complied faithfully, for a period of at least five years, with the terms and conditions of a parole granted him by the board of pardons and paroles, such board shall have no authority to recommend to the Governor that such convict be granted a full pardon.

[Repealed by SL 1978, ch 186, § 44, effective January 1, 1979.]

SDCL 24-15-4 [Effective January 1, 1979] **Person under life sentence not eligible for parole.** A person sentenced to life imprisonment is not eligible for parole by the board of pardons and paroles.

Stumes was sentenced to life imprisonment on March 27, 1974. In a letter dated September 25, 1991, Stumes requested that he have a parole eligibility date set by the Boards of Pardons and Paroles.

SDCL 24-15-1.1 defines parole as:

the discretionary conditional release of an inmate from actual penitentiary custody before the expiration of his term of imprisonment. The prisoner remains an inmate under the legal custody of the department of charities and corrections until the expiration of his term of imprisonment.... A prisoner is never entitled to parole.

SDCL 1–15–1 establishes the Board of Charities and Corrections as an arm of the executive branch of government. *State v. Huftile*, 367 N.W.2d 193, 197 (S.D.1985). Once the court has committed a defendant to the executive branch of government, namely the penitentiary, that inmate then can be released only by the Board of Charities and Corrections. *Id.* (Under SDCL 1–15–1.5, the Department of Corrections took over the functions of the former Board of Charities and Corrections.) SDCL 24–13–3 structures a Board of Pardons and Paroles to be administered under the direction and supervision of the Board of Charities and Corrections. *Huftile*, 367 N.W.2d at 195.

On January 28, 1992, Stumes was served with an entry of an order by the South Dakota Board of Pardons and Paroles rejecting his claim that application of SDCL 24–15–4 violated the ex post facto clause.

In its findings of fact and conclusions of law, the South Dakota Board of Pardons and Paroles stated:

### IV.

Since the time of Mr. Stumes' incarceration on life sentence in 1974, prisoners serving life sentences in the South Dakota State Penitentiary were not considered by the Parole Board to be eligible for parole, because there was no way to determine when a prisoner would have served the then requisite minimums of ¼, ⅜, ½ or ¾ of sentence, since the length of sentence could not be determined until the prisoner died.

### V.

The long standing practice of the South Dakota Board of Pardons and Paroles of not considering prisoners on life sentence eligible for parole, was codified into what is now SDCL 24–15–4, by the 1978 Session Laws, Chapter 186.

Stumes argues that pursuant to *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), it is a violation of his constitutional rights and the ex post facto clause to apply legislation, specifically SDCL 24–15–4, retroactively to his detriment.

In *Weaver*, the state of Florida had enacted a reward system for good conduct and obedience to prison rules. The system was based on a statutory formula that reduced the portion of the sentence that a prisoner must serve in relation to time without rule or regulation infractions and with good performance of work, duties and tasks assigned, "Gain-time".

In 1978, the Florida legislature enacted a new formula for monthly gain-time deductions. The new formula resulted in less gain-time and was applied not only to prisoners sentenced for crimes committed since its enactment in 1978, but also to all other prisoners, including petitioner, whose offenses took place before that date. The petitioner, acting pro se, sought a writ of habeas corpus from the Supreme Court of Florida on the ground that the new statute as applied to him was an ex post facto law prohibited by the United States and the Florida Constitutions. The Court of Florida denied the petition. The United States Supreme Court reversed. *Id.* at 28, 101 S.Ct. at 963–64.

The ex post facto prohibition forbids the Congress and the States to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.... [O]ur decisions prescribe that two critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."

*Id.* at 28–29, 101 S.Ct. at 964 (citations omitted).

The Court also held, however, that no ex post facto violation occurs if the change effected is merely procedural, and does "not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt." *Id.* at 29, n. 12, 101 S.Ct. at 964, n. 12.

There is no question that SDCL 24–15–4 was enacted in 1979 after Stumes' conviction in 1974. The effect is to eliminate any possibility of parole eligibility for a convict serving a life sentence as he is.

In *Warden v. Marrero*, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974), the United States Supreme Court pointed out that there are two reasons for believing that a no-parole provision should be considered an element of an offender's punishment.

> First, only an unusual prisoner could be expected to think that he was not suffering a penalty when he was denied eligibility for parole.... Second, a repealer of parole eligibility previously available to imprisoned offenders would clearly present the serious question under the ex post facto clause of Art. I, § 9, cl 3, of the Constitution, of whether it imposed a "greater or more severe *punishment* than was prescribed by law at the time of the ... offense."

Id. at 662–663, 94 S.Ct. at 2538 (citations omitted).

■ The critical question then is whether the law changes the legal consequences of acts completed before the law's effective date. *Weaver*, 450 U.S. at 31, 101 S.Ct. at 965–66.

At the time of Stumes' sentencing, SDCL 23–60–15 allowed for the board recommendation of a convict serving a life sentence to the governor for pardon only after complying "faithfully, for a period of at least five years, with the terms and conditions of a parole granted him by the board of pardons and paroles." This seems to indicate that up until 1979 when the statutes were changed to specifically prohibit parole for persons sen-

tenced to life imprisonment, there was a parole. Two attorney general opinions concerning parole eligibility for life prisoners were sought at two different times (1920 and 1925) and both indicated that there was parole. The opinions of the attorney general, however, are not binding on the court. *State ex rel. v. O'Neill*, 62 S.D. 522, 254 N.W. 265 (S.D.1934).

On the other hand, SDCL 24–15–3 states that "if any person becomes an inmate of the penitentiary, the director shall *immediately* establish in the record the date when the inmate will be eligible for consideration for parole." (emphasis added). SDCL 24–15–3, which became effective January 1, 1979, replacing SDCL 23–60–4, states substantially the same thing.

Stumes was sentenced to life in prison on March 27, 1974. No date was ever set as to when Stumes would be eligible for parole. The explanation for this is found in the affidavits presented to the parole board by Arthur Canary former director of the Department of Probation and Paroles, and Max Gors, former chairman of the South Dakota Board of Pardons and Paroles. According to them, persons serving life sentences in the South Dakota State Penitentiary at the time of Stumes' conviction and sentencing were not considered to be eligible for parole. These statements lend credence to the assertion that there was no parole available for a convict serving a life sentence even before the passage of SDCL 24–15–4.

Until September 1991 Stumes apparently did not question the lack of an established parole date from 1974, when under his arguments a date should have been set under SDCL 23–60–4. Now Stumes argues that under state law, rules are not enforceable until properly adopted under SDCL 1–26–6.8. However, SDCL 1–26–6.8 was adopted in 1977.

The state points out that in *Cody v. Leapley*, 476 N.W.2d 257 (S.D.1991), the South Dakota Supreme Court noted that Cody's life sentence for murder in February 1978 was without parole and the timing of his actions

were, like Stumes, prior to the codification changes. "Noted" is the operative word because that statement was made in a footnote. Additionally, the murder occurred in February 1978 but Cody was found guilty on September 18, 1980. SDCL 24–15–4 was effective January 1, 1979, so the effect should have been known prior to sentencing.

■ Whether or not the state was complying with the statutes is not at issue. The issue is whether or not the law changed the legal consequences of acts completed before the law's effective date. Stumes was sentenced to life on March 27, 1974. Under the statute, a parole date should have been set immediately. A parole date was not set, apparently for the reasons given. Stumes did not challenge the omission. The statute was changed effective January 1, 1979. Stumes did not challenge the changing of the statute and its effect on him. Then in September 1991, when Stumes finally did request a parole date, he received a notice telling him that he was not eligible which had apparently been the policy since 1974.

SDCL 1–26–31. **Notice of appeal—Time for service and filing.** An appeal shall be taken by serving a notice of appeal upon the adverse party and upon the agency which rendered the decision, and by filing the same, or a certified copy, with proof of such service in the office of the clerk of courts of the county in which the venue of the appeal is set, within thirty days after the agency served notice of the final decision or, if a rehearing is authorized by law and is requested, within thirty days after notice has been served of the decision thereon. Service required by this section may be performed by registered or certified mail and is complete when the material to be served is deposited with the United States postal service.

Stumes failed to file a notice of appeal within the statutory time frames set forth in SDCL 1–26–31. Stumes was served with an entry of an order on January 28, 1992, from the South Dakota Board of Pardons and Paroles rejecting his claim for a parole eligibility date. Stumes' motion for leave to reopen hearing on writ of habeas corpus was submitted on March 4, 1992, over thirty days later.

"The taking of an appeal within the time fixed for the purpose is jurisdictional in nature." *Kulesa v. Department of Public Safety*, 278 N.W.2d 637, 638 (S.D.1979). SDCL 1–26–31 provides that a petition for appeal or notice of appeal must be filed with the circuit court within thirty days of receiving notice of the final decision of the administrative agency. *Id.* When the petition for appeal is not timely filed, the circuit court does not have jurisdiction and therefore, the Supreme Court does not have jurisdiction of appeal from, the circuit court's decision. *Id.*

The appeal should be dismissed for lack of timeliness.

We affirm.

MILLER, C.J., and WUEST, J., concur.

HENDERSON, J., concurs with writing.

AMUNDSON, J., concurs specially.

BERNDT, Circuit Judge, for SABERS, J., disqualified.

HENDERSON, Justice (concurring).

In addition to the immediate appeal to this Court after the trial some twenty years ago, Stumes has now had eight bites of the appellate apple alleging various errors pertaining to his conviction. All of these appellate efforts have been for naught. In actuality, this is his tenth attempt to exonerate himself from a conviction of First Degree Manslaughter.

Stumes admitted that he strangled Ms. Hoff to death. Clinical evidence supports that she had congestion and hemorrhaging in the heart and lungs; her neck reflected a blue discoloration. The facts reveal that Stumes knocked Hoff down to the floor with his right fist. He then choked the life out of her. Believing she was dead, he covered her body with blankets. Before doing so, he sadistically inserted a plastic cap into her vagina. He then set upon a scheme to take a lock from the door of her apartment and took $6.00 out of Hoff's purse to make it appear

that a burglary had ensued. In short, he tried to cover up the crime. Notwithstanding, he claimed the killing was an accident. When his crime was uncovered by investigation, with officers in a car with him, he cried and muttered "taking a human life is so useless."

Arguing the sufficiency of evidence at this juncture, is an expenditure of time and money in total futility. *State v. Wall,* 481 N.W.2d 259, 262 (S.D.1992). It is also res judicata. *Cowell v. Leapley,* 458 N.W.2d 514, 520 (S.D. 1990).

Petitioner's constitutional rights were not violated by denying his request for a parole eligibility date. Approximately seventeen years elapsed before Stumes requested a parole date. This was per a letter to the Parole Board dated September 5, 1991. Said letter was far subsequent to the enactments passed by the State Legislature upon which Stumes now complains. Essentially, by collateral review, Stumes seeks a review of a denial of a parole eligibility date. He failed to follow review remedies under SDCL ch. 1–26. Jurisdiction is lacking. *Border States v. Department of Revenue,* 437 N.W.2d 872 (S.D.1989). He should be precluded from raising this issue now. *Clark v. Solem,* 336 N.W.2d 381 (S.D.1983).

There exists no sea of confusion—no stone unturned. Any unlettered man of the Law would view this case as one where justice has been served. Stumes got his just desserts. This case has attained a zenith in scrutinized judgments. And it should now have repose.

AMUNDSON, Justice (concurring specially).

Stumes elected to proceed through administrative channels in seeking a parole eligibility date. After receiving an unfavorable decision in this arena, he did not appeal. In *Tibbetts v. State,* 336 N.W.2d 658, 662 (S.D. 1983), Justice Wollman, in writing for this court on an inmate's habeas corpus appeal, stated:

> Because petitioner had available not only the remedies of the writs of prohibition and mandamus, those to be issued only when other relief is not available, of course, but also relief by way of adminis-

trative and ultimately judicial review of the disciplinary board's actions, we conclude that the circuit court was without jurisdiction to issue a writ of habeas corpus under SDCL ch. 21–27. In view of this holding, we decline to consider the ex post facto issue.

In this case, I would also decline to consider the ex post facto issue and concur with the majority's position that the trial court was without jurisdiction to hear this attempt at an end around.