STATE of South Dakota, Plaintiff
and Appellee,

v.

Reid M. HOLIDAY, Defendant
and Appellant.

No. 13755.

Supreme Court of South Dakota.

Argued Oct. 14, 1982.

Decided June 8, 1983.

Rodney Freeman, Jr. of Churchill, Manolis & Freeman, Huron, for defendant and appellant.

MORGAN, Justice.

This appeal arises from appellant Reid Holiday's (Holiday) felony convictions for first-degree robbery and committing a felony when armed with a firearm and his subsequent conviction as a habitual offender. We affirm in part, reverse in part and remand with instructions.

Around midnight on April 26, 1979, three men stopped at a farmhouse near Hitchcock, South Dakota. The men tied up and blindfolded the farmer (victim), pistol-whipped him, and demanded money. They left, taking with them money, five or six guns, and a pair of binoculars. About three months later, in July of 1979, Herbert Evans (Evans) called the Sioux Falls Police Department, confessed to participating in the robbery and identified the other two participants. Evans identified Holiday as one of the participants. The sheriff prepared a photographic lineup consisting of eight photographs, including photographs of Holiday and the other robbery participant. Upon showing the victim the photographs, victim identified Holiday but was unable to identify the other participant.

On August 27, 1979, Holiday was served with an arrest warrant containing charges arising from the incident at the farmhouse. At that time Holiday was serving a sentence in the South Dakota State Penitentiary for the conviction of an unrelated crime in Brookings County, South Dakota. As of December 7, 1979, a preliminary hearing had not been held. On that date upon motion of the State, the charges against Holiday were dismissed without prejudice because Evans, the key witness, failed to appear. Twenty-two months later, on October 14, 1981, Holiday was again arrested on charges stemming from the incident at the farmhouse. He was charged with first-degree robbery and committing a felony while armed with a firearm. A preliminary hearing was held on December 9, 1981, even though Evans again did not appear. In

Mikal Hanson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

January, 1982, Holiday moved for dismissal based on denial of his right to a speedy trial and for suppression of the evidence of the photographic identification procedure. In March, 1982, the court denied such motions and Holiday was found guilty by a jury on these felony charges. Subsequently, the court adjudicated Holiday as a habitual offender and sentenced him to life imprisonment in the penitentiary.

Holiday appeals his conviction on several grounds. He alleges the length of time (834 days) between his initial arrest and the preliminary hearing violates his constitutional due process right to a speedy trial. Holiday also contends the trial court erred in failing to properly dispose of his pretrial motions.

▪ The first question that we must consider is whether Holiday is correct in computing the time of delay of trial from his first arrest on August 27, 1979. We hold that he is not. The United States Supreme Court in *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982), held that, although the speedy trial right under the Sixth Amendment attaches when a formal criminal charge is instituted and a criminal prosecution begins, the provision "has no application after the Government, *acting in good faith,* formally drops charges." 456 U.S. at 7, 102 S.Ct. at 1501, 71 L.Ed.2d at 703 (emphasis supplied). Holiday asserts that the State was not acting in good faith when the charges were dismissed. The ground alleged by the State for postponement of the preliminary hearing scheduled on November 21, 1979, and the dismissal of charges before the preliminary hearing scheduled on December 7, 1979, was the failure of Evans, the accomplice-informant, to appear for testimony. Holiday points out that when the preliminary hearing was eventually held after his second arrest, Evans again failed to appear; but, as Holiday emphasizes, the State proceeded to the hearing with only the testimony of the victim and the Spink County Sheriff. Of course, as the record shows, the

State succeeded in having Holiday bound over for trial. Admittedly, the burden of proof on the State at a preliminary hearing is not as heavy as at trial, but we certainly cannot say that an accomplice-informant is not a principal witness, even at a preliminary hearing. Whom the state's attorney considers necessary witnesses is a matter of prosecutorial discretion and we do not care to second-guess the state's attorney in this instance. The ultimate success in binding Holiday over without Evans' testimony is after the fact and is not persuasive evidence of bad faith.[1]

We hold that the period from Holiday's arrest and formal charge in September, 1979, to his re-arrest and formal charge on October 14, 1981, is not includable in the computation under the speedy trial provisions of the United States or South Dakota Constitutions.

Accordingly, we consider whether the period from October 14, 1981, when Holiday was formally charged anew, and March 10, 1982, when he was tried, violates his speedy trial rights. In *State v. Starnes,* 86 S.D. 636, 200 N.W.2d 244 (1972), this court considered the right to speedy trial under the federal constitution. Although the opinion was somewhat divergent on the application thereof, it was the unanimous conclusion of this court that the four-factor balancing test of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), was applicable. Again, in *State v. Black Feather,* 249 N.W.2d 261 (S.D.1976), this court applied the four-factor balancing test of *Barker, supra,* to our state constitutional provision, noting the absence of any legislative provision defining speedy trial thereunder.

▪ The four factors as delineated in *Barker, supra,* are: (1) length of delay; (2) reason for delay; (3) assertion of right; and (4) prejudice to the accused. The United States Supreme Court said in *Barker:* "The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial,

---

1. It appears from the record that two different state's attorneys were involved in this case; the second succeeding the first on or about January 1, 1981.

there is no necessity for inquiry into the other factors that go into the balance." 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. In *Starnes, supra,* the length of delay resulting in dismissal was twenty-five months. In *State v. Black Feather, supra,* the delay was thirty-three months and resulted in dismissal. In *State v. Pickering,* 87 S.D. 331, 207 N.W.2d 511 (1973), a delay of four months was not sufficient to require reversal. Here, Holiday claims a delay of five months requires dismissal of the charges.

■ We hold that Holiday's delay of only five months is not presumptively prejudicial, thus inquiry into the other factors is not necessary. Holiday's right to speedy trial under the federal and state constitutions was not violated.

Holiday next argues that the State brazenly violated SDCL 23A–4–3,[2] which establishes the maximum time within which a preliminary hearing shall be scheduled. Holiday claims that this violation gives rise to a claim of deprivation of due process and equal protection rights under the federal and state constitutions.

■ The right to a preliminary hearing is in itself a statutory, not a constitutional, right. *State v. Reggio,* 84 S.D. 687, 176 N.W.2d 62 (1970). SDCL 23A–4–3 is the State's counterpart of Rule 5 of the Federal Rules of Criminal Procedure (FRCRP). A review of the history of Rule 5(b) FRCRP, the time limitation provision, reveals the provision is traced to 18 U.S.C.A. § 3060, wherein such time limitation, ten days if in detention and twenty days otherwise, was first enacted. Subsection (e) of that enactment provides, in essence, that upon failure to accord an accused a preliminary hearing within the limitations fixed by (b), the accused "shall be discharged from custody, or

the requirement of bail or any other condition of release, without prejudice, however, to the institution of further criminal proceedings against him upon the charge upon which he was arrested." This is, in effect, precisely what happened after Evans had failed to appear for the December 7, 1979, preliminary hearing. In our opinion, the state's attorney and the trial court were correct in dismissing the charge without prejudice.

■ Viewing now the circumstances following October 14, 1981, the date of Holiday's second arrest, we again find no error. The time period from the first appearance on October 14, 1981, to the date of the preliminary hearing scheduled for November 16, 1981, fell well within the statutory limit. Again, the illusive witness failed to appear and the State moved for a postponement to December 2, 1981. Holiday repeats his argument that the postponement was not supported by good cause because the State eventually proceeded to preliminary hearing and secured his binding over without Evans' testimony. We find this argument against prosecutorial discretion no more persuasive in this regard than we did as to good faith in dismissing the charges on December 7, 1979, hereinabove discussed with respect to speedy trial.

Having determined that there is no statutory basis for error, we next turn to Holiday's argument that the alleged violations infringed upon his constitutional rights of due process under the Fifth and Fourteenth Amendments of the United States Constitution and Article VI, §§ 2 and 18 of the South Dakota Constitution. In *State v. Lufkins,* 309 N.W.2d 331 (S.D.1981), we stated: "To warrant a reversal or dismissal of the case, appellant must show he was prejudiced by the delay in obtaining a pre-

**2.** SDCL 23A–4–3 provides, in pertinent part: The hearing shall be held within a reasonable time, but in any event not later than ten days following the initial appearance if the defendant is in custody, and not later than forty-five days if he is not in custody.... With the consent of the defendant and with a showing of good cause, taking into account the public interest and the proper disposition of crimi-

nal cases, time limits specified in this section may be extended one or more times by the committing magistrate. In the absence of consent by the defendant, time limits may be extended by the committing magistrate only upon a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice.

liminary hearing." *Id.* at 335. No reference was made to constitutional authority, although the issue was framed as a due-process question. We did cite to *State v. Warner,* 86 N.M. 219, 521 P.2d 1168 (1974), wherein the New Mexico Supreme Court, considering the issue of constitutional violation under the due process clause, found dismissal of the charge, a reversal of the subsequent conviction, inappropriate remedy if there is no showing of prejudice. In *Warner, supra,* the New Mexico Court referred to *Powell v. United States,* 122 U.S. App.D.C. 229, 352 F.2d 705 (1965). The *Powell* court was dealing with a delay between the time the government, acting through undercover agents, had completed its case against an accused drug dealer and the time of his arrest, a period of some five months. The court stated:

> We think that an accused must show two things in order to invoke an exercise of our supervisory power because of alleged basic "unfairness," resulting from claimed delay in his arrest: that there was no legitimate reason for the delay, and that he was prejudiced by the delay. Appellant bears the burden of establishing his claim.

122 U.S.App.D.C. at 232, 352 F.2d at 708 (citations omitted).

We reiterate our statement in *Lufkins, supra,* quoted above, requiring a showing of prejudice by the delay. We then examine Holiday's claimed prejudice, to-wit: that he lost two alibi witnesses, his wife who had since divorced him and a roomer in their home, Althoff, with whom he had since lost touch. Holiday did, in fact, give notice of an alibi defense and listed the two witnesses he claims to have lost. The record discloses, however, that Holiday's ex-wife testified at the trial as a witness for the State and at no point did defense counsel seek to interrogate her as to any purported alibi. Since Holiday testified at the motion hearing that the alibi defense would have established that on the night of the crime he was home with his wife until 10:30 p.m., at which time he and his wife went to bed, we do not find the loss of Althoff very persuasive when Holiday declined to use the testimony of his ex-wife who was present at trial. We therefore find no error in the trial court's denial of the motion to dismiss, based on the alleged violation of SDCL 23A–4–3, under either statutory or constitutional grounds.

■ Holiday also argues the trial court erred in denying him twenty peremptory challenges. SDCL 23A–20–20 provides, in part, "[i]f an offense charged is a Class A or Class 1 felony, the prosecution and the defense each have twenty peremptory challenges. In all other felony cases, the prosecution and the defense each have ten peremptory challenges." Holiday maintains that the habitual offender portion of the information moved his felony from a Class 2, with a maximum of 25 years, to a Class 1 which carries a maximum penalty of life. Thus, Holiday reasons he was entitled to twenty peremptory challenges. We disagree.

This court has several times held that even though an information may contain several counts, charging separate offenses as was the case here, a defendant was still not entitled to additional peremptory challenges. *State v. Kingston,* 84 S.D. 578, 174 N.W.2d 636 (1970); *State v. Nelson,* 84 S.D. 218, 169 N.W.2d 533 (1969). Further, this court has specifically addressed whether a defendant charged with a felony on the first part of the information and as a habitual offender on the second part of the information was entitled to twenty peremptory challenges. *State v. Watkins,* 272 N.W.2d 839 (S.D.1978). In *Watkins,* we held:

> The South Dakota statute regarding enhanced punishment for habitual criminals does not create a new offense, but merely authorizes the trial court, in its discretion, to impose a more severe penalty upon one who is found to have the status of a habitual criminal. *State v. DeMarsche,* 68 S.D. 250, 1 N.W.2d 67 (1941); *State v. Ruffing,* 78 S.D. 556, 105 N.W.2d 541 (1960). . . . Whether or not an accused is a habitual offender has no relation to the trial for the charge against him, for the habitual criminal

statute has nothing to do with trial procedure. The subsequent finding as to whether he is a habitual offender goes only to the punishment he will receive as a result of his recidivist status and not to the punishment for the particular offense charged.

272 N.W.2d at 840 (footnote omitted).

The law is clear on this issue. Holiday's contention that he was entitled to twenty peremptory challenges fails.

■ Holiday further argues, without citing any authority, that he was denied due process of law by the court's denial to grant his motion for the county to purchase for him a new suit and tie. Since the motion was denied, Holiday wore blue jeans and a sweatshirt at the trial. Although this clothing was issued to him in prison, the clothing did not indicate that it was from prison nor that Holiday was in prison. Since the clothing which Holiday did wear did not result in prejudice to him, this contention also fails.

We next consider Holiday's claim of alleged error on the part of the trial court in failing to properly dispose of his certain pretrial motions. On January 25, 1982, Holiday, through his counsel, filed pretrial motions. The first, asking for dismissal for delay in granting the preliminary hearing and for failure to afford the accused a speedy trial; and the second, in the alternative, requesting suppression of certain evidence being the result of the photo identification process. These motions were brought on for hearing before the court on February 9, 1982. At that time the court took the motions under advisement to review the record and the briefs and apparently proceeded with the arraignment of the accused. Not until March 10, 1982, the morning the case was scheduled to go to trial to a jury, did the court make any pronouncement of its decision on the motions. At that time, in chambers and out of the presence of the jury, the court acknowledged that a motion to dismiss and a motion

to suppress introduction of evidence had been made and announced its decision, "The motions of the defense will be denied." The court then went on to say: "In the event of conviction, though, perhaps since this may be an appealable matter, the State may before entry of Judgment prepare Findings of Fact and Conclusions to support the denial."

After discussing other preliminary matters, the jury trial commenced and on the following day, March 11, the jury returned a verdict of guilty of the offense charged. Holiday pleaded guilty to the second count alleging an habitual criminal offense. Holiday was thereupon sentenced to life in the state penitentiary. On March 17, 1982, the trial court without any notice to counsel for Holiday, entered findings of fact and conclusions of law deciding the motion for dismissal only. The court entirely omitted any reference to the suppression motion. Thereafter, also, the court entered a formal judgment of conviction and sentence.

Holiday's claim of error is twofold. First, that the trial court improperly entered findings of fact and conclusions of law after the trial without affording Holiday an opportunity to file objections and his proposed findings of fact and conclusions of law; and further that the trial court erred in not entering any findings or conclusions whatever on the suppression issue. We will deal with these claims of error in that same order.

SDCL 23A–8–3 (Rule 12(b)) mandates that motions to suppress evidence be raised before trial under penalty of waiver. SDCL 23A–8–8 (Rule 12(e)) states: "A motion made before a trial *shall* be determined before the trial unless the court, for *good cause,* orders that it be deferred .... *Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.*" (Emphasis supplied.) In *State v. Stumes,* 90 S.D. 382, 241 N.W.2d 587 (1976),[3] with regard to the trial court's ruling on a suppression

---

**3.** We would first note that *State v. Stumes,* 90 S.D. 382, 241 N.W.2d 587 (1976), was written prior to the adoption of SDCL 23A–8–3 (Rule

12(b)) and SDCL 23A–8–8 (Rule 12(e)) in 1978 as part of the South Dakota Code of Criminal Procedure. *See* 1978 S.D.Sess.L. ch. 178.

motion (confession), this court pointed out that "absent the necessary findings of fact and conclusions of law which make up a 'decision,' . . . this court's review is seriously hampered, if not made impossible . . . ." 90 S.D. at 389, 241 N.W.2d at 591. In *State v. Hartley*, 326 N.W.2d 226 (S.D.1982), we again pointed out our preference for "the entry of written formal and specific findings and conclusions," *Id.* at 228, but we nevertheless recognized that verbal findings and conclusions made on the record are acceptable, noting however that such findings and conclusions must be such that there is no room for speculation and conjecture concerning what the trial court found or concluded.

Our decision in *Stumes, supra,* and its progeny, taken in light of the clear wording of the statute, have placed us in an anamolous situation. It would appear that if compliance is made with *Stumes* and formal written findings and conclusions are entered, this must be done in compliance with SDCL 15–6–52(a). That provision requires notice of proposed findings and conclusions and allowing defendant five days within which to object and propose his own findings and conclusions under pain of waiver of the issue on appeal. On the other hand, if the clear wording of the statute is followed, as approved in *Hartley, supra,* the trial court dictates its findings and conclusions in the record and defense counsel is accorded no objections or proposals but his issues are not waived on appeal. SDCL 23A–44–13 (Rule 51).

In an attempt to remedy this situation, we look to the provisions of SDCL 23A–45–8, which provide:

> Whenever any provision of the code is inconsistent or in conflict with this title or any part of it, the other statutory provision shall be reconciled and harmonized with this title as much as possible, and if such provision cannot be so harmonized and reconciled, then this title shall apply.

The basic reason behind the request for detailed findings was set out in *Stumes, supra,* as "the inability of this court to determine the credibility of the witnesses which determination is within the purview of the trial court before whom the witnesses appeared." 90 S.D. at 389, 241 N.W.2d at 591. Similarly, the language in *Hartley, supra,* directs that the findings and conclusions leave no room for speculation and conjecture concerning what the trial court found or concluded. The obvious reason is that upon appeal all we have to go by in reviewing the issue is the trial court's findings and conclusions.

■ In harmonizing *Stumes, supra,* and its progeny with SDCL 23A–8–3 and –8, we determine that a trial court judge may verbally enter on the record at the motion hearing the findings of fact and conclusions of law upon which it bases its opinion. In the interest of clarity and to preserve the record for appeal, it may direct prevailing counsel to prepare formal written findings and conclusions. When these are signed and filed they meet the requirement of SDCL 23A–8–8 that the trial court's findings be stated on the record. Furthermore, the exercise of entering such written findings and conclusions will most likely insure against speculation or conjecture as to the basis upon which the trial court grounded its decision. We hold, however, that such written findings and conclusions are not within the contemplation of SDCL 15–6–52(a). Opposing counsel is not required nor even afforded the opportunity to present alternatives or objections, yet, as in the case of findings verbalized on the record, his issues are preserved for appeal. In this case, Holiday complains that he was unable to object to the State's proposed findings and conclusions or to propose his own. He can demonstrate no prejudice, however, because any issue that he has attempted to raise has been fully briefed, argued and presumably adjudicated herein.

The reason for the requirement that the determination be made before trial is rather obviously twofold. First, that the parties can then appropriately prepare for trial and, secondly, that the party against whom the ruling goes can petition this court for intermediate appeal and a stay of proceed-

ings pending disposition of such petition. It is rather noteworthy that in most instances, when petitions for intermediate appeal have been presented by the State where suppression was granted, the decision of the court has been reduced to findings of fact and conclusions of law. We acknowledge that the statute does provide that the trial court may delay the decision until trial on the general issues or until after the verdict; however, that is allowed only for good cause.

In this instance, Holiday complains only that the failure of the trial court to render a decision before trial cast him in the position of not knowing whether his motions were going to be granted or not and whether or not he would have to go to trial, thus impeding his preparation. We find, however, that Holiday failed to demonstrate any prejudicial loss because of the untimely entry of the court's decision.

The issue of the trial court's failure to dispose of the alternative motion for suppression in its findings and conclusions is another matter. Although the pronouncement on March 10 said "the motions of the defense will be denied," clearly, the findings of fact and conclusions of law entered on March 17 did not touch on the suppression motion in any manner. A review of the record at trial demonstrates that the photographic lineup was the basis for identification even at the trial. There were various issues raised as to the reliability of the photographic identification process, suggestiveness, failure to identify another participant and witness's visual acuity. All of these cry for the trial court's determination of validity, which is absent from this record. As in *Stumes, supra,* we find: "The total lack of findings of fact and conclusions of law in the present case causes us to remand this case for a determination of the factual issue upon the evidence previously adduced." 90 S.D. at 390, 241 N.W.2d at 591 (footnote omitted).

If the trial court enters findings and conclusions that the photographic identification process was proper, the conviction is af-firmed. If the court finds otherwise, a new trial is ordered.

We affirm in part, reverse in part, and remand with instructions.

All the Justices concur.