**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Arnold L. FLEGEL, Defendant and Appellant.**

**No. 17459.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 24, 1991.

Decided April 22, 1992.

---

Mark Barnett, Atty. Gen., Sherri Sundem Wald, Charles D. McGuigan, Asst. Attys. Gen., Pierre, for plaintiff and appellee.

David R. Wurm, Rapid City, for defendant and appellant.

MILLER, Chief Justice.

Arnold L. Flegel (Flegel) appeals his conviction for fourth offense driving while under the influence of alcohol (DWI). We remand for further proceedings.

### FACTS

At approximately 10:00 p.m. on the night of November 5, 1990, a woman driving on a muddy rural road in Pennington County, South Dakota came upon an abandoned car that had slid into the ditch along the roadside. After stopping and confirming there was no one in the car, the woman continued on her way home. A short time later she came upon a man "staggering" down the road with blood on his face. The woman stopped and picked up the man, offering to drive him to a hospital. Declining the offer, the man told the woman to keep driving but did not say where he wanted to go.[1] After traveling for about five minutes, the woman became apprehensive and pulled into the driveway of a neighbor's residence to, "call somebody." As the woman got out of her car, the man also jumped out and ran away.

---

1. The woman later described the man as, "kind of incoherent," and noted that he smelled, "strongly of alcohol."

The woman later relayed the above information to the highway patrol and, at approximately 10:30 p.m., a trooper visited the scene of the abandoned car. After confirmation of the registration of the vehicle and several phone calls, including a call to Flegel's father, the trooper was able to identify Flegel as the possible driver. The trooper proceeded to Flegel's trailer home where he talked to Flegel's father who lived in an adjacent trailer. The trooper asked to speak to Flegel and the father went to another room to get him while the trooper remained in the kitchen/living room area of Flegel's residence. Shortly thereafter, Flegel came into the living room where he met the trooper. Flegel "staggered" when he entered the room and he had a gash on his forehead and dried blood in his mustache and beard.

During the trooper's ensuing conversation with Flegel, Flegel admitted driving earlier that evening and sliding off the road. Flegel also admitted consuming several beers earlier that night. The trooper informed Flegel he was going to arrest him and that he needed to get dressed. After Flegel dressed, the trooper placed him under arrest for driving with a revoked license and took him to the patrol car where the trooper proceeded to administer a series of field sobriety tests and a preliminary breath test. Based upon the results of these tests and the trooper's observations of Flegel's manner and appearance, the trooper arrested Flegel for DWI and transported him to the Pennington County jail.

Flegel was subsequently charged in an information with one count of driving while under the influence of alcohol (SDCL 32–23–1(2)), an alternative count of driving with .10 percent or more of alcohol in his blood (SDCL 32–23–1(1)) and one count of driving with a revoked license (SDCL 32–12–65(1))[2]. Additionally, Flegel was charged in a Part II information with fourth offense DWI (SDCL 32–23–4.6). Prior to trial, Flegel filed a motion to suppress all statements and evidence obtained by the highway patrol trooper on the grounds that the same were obtained as a

result of his warrantless seizure in violation of both the constitutions of the United States and of the State of South Dakota. Flegel's motion was denied after a suppression hearing on January 7, 1991.

Flegel's jury trial proceeded on February 1, 1991. During trial, Flegel renewed his objection to the previously challenged evidence and his objection was again denied. After presentation of all the evidence, the jury returned a verdict finding Flegel guilty of driving while under the influence of alcohol (SDCL 32–23–1(2)). Flegel subsequently waived trial on the Part II information for fourth offense DWI and admitted his prior DWI convictions. A judgment and sentence were entered accordingly and this appeal followed.

## ISSUE

WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING FLEGEL'S MOTION TO SUPPRESS THE EVIDENCE OBTAINED BY THE HIGHWAY PATROL TROOPER?

Flegel argues the trooper's warrantless entry into his home to effect his arrest violated the fourth amendment to the U.S. Constitution and Article VI, § 11 of the South Dakota Constitution requiring suppression of all evidence obtained as a result of that entry. He asserts the trial court erred in failing to suppress that evidence during trial.

A trial court's findings of fact from a suppression hearing must be upheld unless they are clearly erroneous. *State v. Pfaff,* 456 N.W.2d 558 (S.D.1990)....
This court's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made. *State v. Corder,* 460 N.W.2d 733 (S.D.1990). In making this determination, we review the evi-

---

**2.** State ultimately dismissed the charge of driving with a revoked license.

dence in a light most favorable to the trial court's decision. *Id.*

To disturb a trial court's ultimate decision [concerning the suppression of evidence], this court must find that an abuse of discretion has occurred. *Pfaff, supra.* This refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. *Id.* In this regard, we do not determine whether we would have made a like decision but only whether a judicial mind, considering the law and facts, could have reached a similar decision. *Id.*

*State v. Baysinger*, 470 N.W.2d 840, 843 (S.D.1991).

In this instance, the trial court did not enter written findings of fact and conclusions of law after the suppression hearing but merely entered oral findings and conclusions on the record at the close of the hearing. *See, State v. Bonrud*, 393 N.W.2d 785 (S.D.1986) (although written findings of fact and conclusions of law are preferred, a trial court may verbally enter on the record at a motion hearing the findings and conclusions on which it bases its opinion). The trial court denied Flegel's suppression motion based on its conclusion that the trooper had two exigent circumstances to consider in entering Flegel's trailer: first, the trooper knew Flegel was injured and was concerned he needed medical attention; and, second, evidence of Flegel's blood alcohol content would dissipate if he took time to obtain a warrant.

"[A] warrantless arrest that occurs inside an individual's home is unconstitutional unless the officers demonstrate the existence of probable cause and exigent circumstances.... It is well established that a warrantless arrest within the confines of the home, barring exigent circumstances, is unconstitutional." *Duncan v. Storie*, 869 F.2d 1100, 1102 (8th Cir.1989) (footnote omitted). *See also, State v. Heumiller*, 317 N.W.2d 126 (S.D.1982).

In *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) the U.S. Supreme Court held the defendant's warrantless home arrest violated the fourth amendment to the U.S. Constitution because of the absence of any exigent circumstances justifying the arrest. *Welsh, supra,* involved a set of facts and circumstances highly analogous to those in the instant case. A witness observed a car swerve off a road and into an open field. The witness stopped and was approached by the other driver who asked for a ride home. When the witness suggested waiting for assistance, the other driver walked away from the scene. Police arrived on the scene and checked the registration of the abandoned car, identifying Welsh as the owner. Without obtaining any warrant, they proceeded to Welsh's home. Welsh's stepdaughter admitted the police into the residence and they proceeded to Welsh's upstairs bedroom where they placed him under arrest for DWI.

Welsh subsequently refused to submit to a breath test. During trial court proceedings to revoke Welsh's driver's license because of that refusal, the trial court concluded Welsh's warrantless home arrest was lawful. The Wisconsin Supreme Court later found three exigent circumstances that justified the arrest: the need for hot pursuit of the suspect, the need to prevent physical harm to the offender and the public, and the need to prevent destruction of evidence.

Welsh appealed to the U.S. Supreme Court. The high court found the claim of hot pursuit unconvincing because there was no immediate or continuous pursuit of Welsh from the scene of a crime. As for the claimed threat to public safety, the Supreme Court found because Welsh had already arrived home and abandoned his car, there was little remaining threat to public safety. Finally, as to the need to preserve evidence, the court held:

> The State of Wisconsin has chosen to classify the first offense for driving while intoxicated as a noncriminal, civil forfeiture offense for which no imprisonment is possible. This is the best indication of the State's interest in precipitating an arrest, and is one that can be easily identified both by the courts and by officers faced with a decision to ar-

rest. Given this expression of the State's interest, *a warrantless home arrest cannot be upheld simply because evidence of the petitioner's blood-alcohol level might have dissipated while the police obtained a warrant.* To allow a warrantless home entry on these facts would be to approve unreasonable police behavior that the principles of the Fourth Amendment will not sanction.

*Welsh,* 466 U.S. at 754, 104 S.Ct. at 2100, 80 L.Ed.2d at 746 (citations and footnote omitted) (emphasis added).

*Welsh* was closely adhered to by the Eighth Circuit Court of Appeals in *Patzner v. Burkett,* 779 F.2d 1363 (8th Cir.1985), another case bearing substantial similarity to the case at hand. Patzner also left the scene of a late night car accident. Two police officers were called to the accident scene where the driver of a car damaged by Patzner told the officers Patzner had appeared intoxicated. The officers then drove to Patzner's house. One of the officers went to the open front door and spoke to a house guest of Patzner's through the screen asking to speak to Patzner. The guest replied Patzner was in the kitchen. The officer entered the house, walked into the kitchen and told Patzner he was under arrest.

On appeal of a subsequent federal civil rights action by Patzner over the legality of the arrest, the Eighth Circuit Court of Appeals reviewed the constitutional validity of the arrest. At issue before the Eighth Circuit was whether sufficient exigent circumstances existed to overcome the strong presumption that Patzner's warrantless home arrest was per se unreasonable. The Eighth Circuit found no evidence suggesting Patzner had any intention of getting back into his car and taking to the road and, therefore, concluded that a claimed threat to public safety was unconvincing. As to a claimed need to preserve evidence of Patzner's blood alcohol level, the circuit court found this issue controlled by *Welsh, supra.* In reaching this conclusion, the court noted Patzner's case was factually indistinguishable from *Welsh* except North Dakota classified DWI as a misdemeanor with a minimum sentence of a $100 fine or

three days in jail while Wisconsin, Welsh's home state, classified DWI as a noncriminal, civil forfeiture violation. The court found this minor difference in penalty was not sufficient to support a result different from that reached in *Welsh.*

■ Given the holdings in *Welsh* and *Patzner* and the substantial similarity of those cases to Flegel's, we find a similar result is required in resolving the issue of whether exigent circumstances justified Flegel's warrantless arrest. First, the record does not support state's contention that the trooper held a legitimate concern for Flegel's health yielding an exigent circumstance permitting his warrantless entry into Flegel's residence. "This court has ... recognized an exception to the warrant requirement when an emergency exists." *State v. Max,* 263 N.W.2d 685, 687 (S.D. 1978). Under the fourth amendment, an emergency entry is justified if the police believe a person is in need of immediate aid. *State v. Bittner,* 359 N.W.2d 121 (S.D.1984). " 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' " *Heumiller,* 317 N.W.2d at 129 (*quoting Mincey v. Arizona,* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978)).

Here, the record establishes that after the trooper visited the scene of the abandoned car and spoke to the woman who found it he was initially concerned the driver might be injured and out in the elements. However, after Flegel was identified as the possible driver, Flegel's father was contacted. At that time, the father indicated he had checked on Flegel, that he was at home and that he only had a "bump" on the head. After the trooper was in possession of this information, it is difficult to envision how he could have entertained a legitimate belief that Flegel was in need of any immediate aid to protect or preserve his life or to avoid serious injury.

■ Second, state's contention that an exigent circumstance existed in state's need to preserve evidence of Flegel's blood

alcohol content is dispelled by *Welsh, supra* and *Patzner, supra.* In both cases, the courts concluded a warrantless home arrest could not be justified simply because evidence of the defendant's blood alcohol level might dissipate while law enforcement obtained a warrant. This case is essentially indistinguishable from both *Welsh* and *Patzner.* The *Welsh* court acknowledged Welsh was actually charged with a second offense DWI. However, the police conducting the warrantless entry did not know Welsh had been previously convicted of DWI. The court stated under such circumstances, it must be assumed the police were acting as if a nonjailable traffic offense was involved. *Welsh,* 466 U.S. at 746 n. 6, 104 S.Ct. at 2096 n. 6, 80 L.Ed.2d at 741 n. 6.

■ A similar situation is present here. Flegel was ultimately arrested for DWI but the warrantless arrest in Flegel's home was for driving with a revoked license, a misdemeanor traffic offense. SDCL 32–12–65(1). Although Flegel was later arrested outside his trailer for DWI, even considering the arrest for that offense, the record is unclear whether, at the time of that arrest, the trooper knew of Flegel's prior DWI convictions.[3] Thus, under the *Welsh* analysis, for the purpose of determining state's interest, we must look to the penalties for driving with a revoked license or *first* offense DWI. In South Dakota, the penalties for these offenses are similar to those attaching to the nonjailable traffic offense involved in *Welsh,* 466 U.S. at 754, 104 S.Ct. at 2100, 80 L.Ed.2d at 746 (note citation to SDCL 32–23–2 in footnote 14), and the misdemeanor penalties discussed in *Patzner,* 779 F.2d at 1368–69, although our statute provides for up to one year imprisonment (SDCL 22–6–2). Therefore, like the Eighth Circuit in *Patzner,* we hold, "the minor difference in penalty is not sufficient to support a result different from that reached in *Welsh." Patzner,* 779 F.2d at 1368–69.

■ State also argues the arrest in this case was justified on the basis that Flegel's father consented to the trooper's warrantless entry into Flegel's home. However, our review of this issue is hampered by the trial court's failure to enter specific, written findings of fact and conclusions of law on the question. Although, the trial court did find on the record that the trooper was asked to go into the entryway of Flegel's home and that Flegel emerged and presented himself voluntarily, the trial court also stated it did not see the question of whether the trooper was invited into the home as a, "particularly important issue," choosing instead to decide the matter on the exigent circumstances previously discussed. We disagree with the trial court's determination of the significance of the consent issue inasmuch as, "a valid and voluntary consent to enter may be followed by a warrantless home arrest." *Patzner,* 779 F.2d at 1369.

This court has repeatedly stated its preference for, "separate, appropriate, and specific findings of fact and conclusions of law in order to aid appellate review and 'insure against speculation and conjecture.'" *State v. Albright,* 418 N.W.2d 292, 294 (S.D.1988) (citations omitted). Here, the absence of specific, written findings and conclusions on the consent issue prohibits meaningful appellate review of the question, particularly given the disputed testimony in this case over whether Flegel's father did invite the trooper into Flegel's residence. Accordingly, this deficiency in the findings and conclusions requires us to remand this matter for a determination of the factual questions relative to the consent issue on the evidence previously adduced. *See, State v. Holiday,* 335 N.W.2d 332 (S.D.1983); *State v. Stumes,* 90 S.D. 382, 241 N.W.2d 587 (1976). Similar to our dispositions in *Holiday,* and *Stumes,* if the trial court in this case enters findings and conclusions that the trooper's entry into Flegel's residence was consensual, the conviction is affirmed. If suppression of any of the disputed evidence is granted, a new trial is required.

Remanded with instructions.

---

**3.** The trial court's oral findings imply it viewed the arrest as for a first offense DWI.

WUEST, HENDERSON and AMUNDSON, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

I would affirm the trial court on the basis that there was consent for the trooper to wait in Flegel's trailer. Had Flegel refused to leave the privacy of his bedroom, the trooper would have needed a warrant for his arrest, but he voluntarily presented himself to the trooper. In fact, despite some dispute in the testimony, the trial court specifically found on the record that the trooper was *asked* to go into the entryway of Flegel's home and that Flegel then emerged and presented himself to the trooper *voluntarily*. This voluntary consent was sufficient for a warrantless home arrest. *See Patzner*, 779 F.2d at 1369; *United States v. Briley*, 726 F.2d 1301, 1303 (8th Cir.1984).

These findings are supported by the record. When the trooper arrived at Flegel's residence, he learned there were two trailers, one belonging to Flegel and one to his father. The trooper spoke to Flegel's father outdoors in the driveway and asked to speak with Flegel. The trooper testified Flegel's father said "follow me" or "come on in" and that he then followed the father into Flegel's trailer. The trooper further testified that, once inside, the father told him to have a chair, asked him if he wanted a cup of coffee and said he would get his son. The familial relationship between Flegel and his father, the fact their trailers were in such close proximity to one another and, particularly, the fact the father felt free to enter Flegel's trailer without any attempt to rouse Flegel from outdoors supports the conclusion that the father held common authority or control over the premises for most purposes. Clearly these facts supported a reasonable belief by the trooper that the father possessed sufficient authority to consent to his limited entry into the kitchen area of the trailer. *See State v. Zachodni*, 466 N.W.2d 624, 628 (S.D.1991).

While the trooper sat waiting at the kitchen table he heard Flegel's father rousing Flegel in another room. Shortly thereafter, Flegel emerged to talk to the trooper. Once inside the kitchen area of the trailer, the trooper had a right to be where he placed Flegel under arrest * when Flegel emerged *voluntarily* from his bedroom. A different case would be presented if the trooper, similar to the officers in *Welsh* and *Patzner*, had proceeded from the kitchen area, where he had consent to be present, to the bedroom to make the arrest. Such an incursion would have exceeded the scope of the consensual entry and constituted an invasion on a separate and distinct expectation of privacy held by Flegel. This issue does not arise, however, because of Flegel's voluntary emergence from his bedroom. Therefore, we should affirm.

---

* Probable cause for the arrest is not challenged in this appeal.