2016 IL App (2d) 150340
No. 2-15-0340
Opinion filed May 9, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) ) ) ) | Nos. 15-DT-26 15-TR-436 15-TR-437 15-TR-438 15-TR-439 |
| SCOTT S. SWANSON, | ) ) | Honorable Robert P. Pilmer, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE SPENCE delivered the judgment of the court, with opinion.
Justices Hutchinson and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    The State appeals from the judgment of the circuit court of De Kalb County granting defendant Scott S. Swanson's motion to suppress evidence and his petition to rescind his statutory summary suspension. Because the warrantless entry into defendant's home, which was justified by neither consent nor the need for emergency aid, violated the fourth amendment, the trial court properly granted the motion to suppress and the petition to rescind. Thus, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    Defendant was charged by complaint with two counts of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(1), (a)(2) (West 2014)), one count of leaving the scene of a property-damage accident (625 ILCS 5/11-402 (West 2014)), one count of illegal transportation of alcohol (625 ILCS 5/11-502(a) (West 2014)), one count of failure to reduce speed to avoid an accident (625 ILCS 5/11-601(a) (West 2014)), and one count of improper lane usage (625 ILCS 5/11-709 (West 2014)).   Defendant filed a motion to suppress evidence (motion) and a petition to rescind his statutory summary suspension (petition).

¶ 4    The following evidence is taken from the combined hearing on the motion and the petition.   On January 7, 2015, at about 6 p.m., defendant met a friend at a tavern in Hinckley. During the hour to hour and a quarter that he was there, defendant drank three beers.

¶ 5    After leaving the tavern, defendant drove his vehicle toward home.   The roads had icy, snowy patches.   When defendant was approximately a mile and a half to two miles from his home, his vehicle slid into a snowy ditch.   The vehicle struck a sign, and the airbags deployed. Defendant cut his right index finger.

¶ 6    Because his vehicle would not start, defendant tried to call home.   He was unsuccessful in doing so, so he locked the vehicle and set out on foot.

¶ 7    The temperature was well below zero, the ground was snow-covered, and there was blowing snow.   Because of the weather conditions, defendant ran to the Thompsons' house, about a mile from the accident.   Defendant went to the doorstep, but the occupants would not let him in.   Because defendant would not leave, the occupants called 911.   According to Mr. Thompson, when defendant saw him making the phone call, defendant tried to stop him by putting his finger to his mouth and indicating "no."   Defendant denied having done so.   Because defendant saw Mr. Thompson holding a handgun, defendant ran away.

¶ 8    After leaving the Thompson residence, defendant went to another house, about half a mile from his home. Because he thought that no one was there, he ran the remaining half-mile to his home.

¶ 9    Deputy Diefenderfer of the De Kalb County sheriff's office was dispatched to the Thompson house to investigate the report of a suspicious or disorientated person. While en route, he saw defendant's vehicle in the ditch. It was heavily damaged, the airbags were deployed, and there was an open beer can on the passenger-side floorboard. He did not see any blood in the vehicle.

¶ 10    Once it was determined that the vehicle belonged to defendant, Sergeant Pettengell of the De Kalb County sheriff's office went to defendant's home. He arrived at around 8:20 p.m. Defendant's wife answered the door and invited him in. He explained to her that defendant's vehicle had been in an accident but that defendant had not been found. He left his business card with defendant's wife and asked her to call when defendant arrived home. Sergeant Pettengell then joined the ongoing search for defendant.

¶ 11    According to defendant's wife, shortly after Sergeant Pettengell left, defendant arrived home. She described him as freezing cold and covered in snow. He also had a cut on his finger.

¶ 12    After assuring their two children that defendant was okay, defendant's wife went upstairs to tend to defendant's finger and to draw him a warm bath. In the upstairs bathroom, she saw a pint glass of vodka and orange juice on the counter. According to defendant, he had poured the glass to warm him up. While defendant's wife dressed his wound, he drank the vodka and orange juice.

¶ 13    After defendant's wife drew the bath and checked on the children, she called the number on Sergeant Pettengell's business card. A dispatcher answered, and defendant's wife told the

dispatcher that defendant was home, that he did not need any medical attention, and that she would arrange to have his vehicle removed from the ditch.

¶ 14    According to defendant's wife, an officer broke into the telephone conversation and told her that the police needed to see defendant to verify that he was at home.  She responded several times that defendant made it home safe, that he was fine, and that the police did not have to come to the house.  According to defendant's wife, the officer stated that he was going to come to the house and that she would have to let him in.  She repeated that there was no need for him to do so and that defendant was fine.

¶ 15    A few minutes after the phone conversation, two officers arrived at defendant's home.  Defendant's wife opened the interior door and spoke to the officers through the closed storm door.  She told them that defendant was fine, that she would take care of him, and that they did not need to be there.  To better hear what the officers were saying, she opened the storm door slightly.  When she did, one of the officers opened the storm door farther and they both walked in.  According to her, the storm door had springs that kept it from being left open.

¶ 16    On the other hand, Deputy Hiatt testified that, after he received a dispatch saying that defendant was home, he went to defendant's house and knocked on the door.  Defendant's wife answered the door.  When Deputy Hiatt asked her where defendant was, she said that he was upstairs in the bath.  Deputy Hiatt then told her that he needed to speak with defendant.  She then stepped into the kitchen, leaving the door open.  Deputy Hiatt interpreted her actions as inviting him to follow her.  He did not remember there being a storm door.  He denied grabbing or pushing the door, or telling defendant's wife that she was going to need to let him in or he would come in anyway.  Deputy Hiatt described defendant's wife as very polite, and he testified that she never asked him to leave.

¶ 17    According to Sergeant Pettengell, when he arrived at defendant's house the second time, Deputy Hiatt was already in the kitchen and let him into the house. Defendant's wife never told them that they did not have permission to be in the house or asked them to leave. He described defendant's wife as polite and cooperative.

¶ 18    Once the two officers were inside, they remained in the kitchen. Sergeant Pettengell denied that he or Deputy Hiatt said that if defendant did not come downstairs they would go up and get him. When defendant came downstairs, Deputy Hiatt asked him what had happened. Defendant stated that his vehicle had slipped off of the road. He initially said that a friend had driven him home, but he later admitted that he had walked home.

¶ 19    According to defendant's wife, once the officers came in, they began asking where defendant was. She told them that he was fine, that he was upstairs, and that she was running him a bath to warm him. Defendant then came to the top of the stairs and told the officers that he was fine and that they did not need to be there, and he thanked them for coming. After the officers told defendant's wife that if he did not come down they would go up and get him, she repeated that to defendant. Defendant eventually came downstairs.

¶ 20    When defendant came downstairs, his pants had snow and ice on them and his skin was red. Deputy Hiatt asked him if he needed medical assistance, and he responded "no," that he was fine. Deputy Hiatt described defendant as having bloodshot and glassy eyes, slurred speech, a strong odor of an alcoholic beverage, and unsteady balance. While still in the house, the officers arrested defendant for leaving the scene of a property-damage accident. After they arrested defendant, they removed him from the house. He was arrested later for DUI.

¶ 21    After defendant was removed from the home, Sergeant Pettengell knocked on the door, and defendant's wife let him in. She was crying and upset.

¶ 22    The trial court, in ruling on the motion and the petition, found that defendant's wife was credible, that there were two doors, and that defendant's wife did not indirectly or impliedly invite Deputy Hiatt into the house. The court also ruled that there were no exigent circumstances that justified the entry into the home. Therefore, the court granted the motion "as to everything [that] occurred after Deputy Hiatt entered the residence on that evening." The court also granted the petition, because there was not probable cause to believe that defendant had been under the influence when driving his vehicle. The State filed a certificate of impairment (see Ill. S. Ct. R. 604(a)(1) (eff. Dec. 11, 2014)) and a timely notice of appeal.

¶ 23                                    II. ANALYSIS

¶ 24    On appeal, the State contends that the trial court erred in granting the motion, because the warrantless entry was justified by either consent or the need for emergency aid. The State further asserts that the court erred in granting the petition, because there was probable cause for the arrest.

¶ 25    A trial court's ruling on a motion to suppress is reviewed under a two-part standard. *In re D.L.H.*, 2015 IL 117341, ¶ 46. Under that standard, the court's factual findings will be reversed only if they are against the manifest weight of the evidence. *In re D.L.H.*, 2015 IL 117341, ¶ 46. A finding is against the manifest weight of the evidence only where an opposite conclusion is clearly evident from the record. *People v. Feddor*, 355 Ill. App. 3d 325, 330 (2005). The court's ultimate legal ruling, as to whether suppression is proper, is reviewed *de novo*. *In re D.L.H.*, 2015 IL 117341, ¶ 46. The standard of review is the same for an appeal from a ruling on a petition to rescind. *People v. Wear*, 229 Ill. 2d 545, 561 (2008).

¶ 26    We turn first to the propriety of the trial court's ruling regarding the motion. The chief evil against which the fourth amendment is directed is the entry into the home. *Wear*, 229 Ill. 2d

at 562. Thus, a warrantless entry of the home is presumed unreasonable. *Wear*, 229 Ill. 2d at 562. However, consent to enter is one of the exceptions to the warrant requirement. *People v. Davis*, 398 Ill. App. 3d 940, 956 (2010). To be efficacious, consent must be voluntary. *Davis*, 398 Ill. App. 3d at 956. That is, it must be given without any coercion, expressed or implied, and not be the product of any intimidation or deception. *People v. Prinzing*, 389 Ill. App. 3d 923, 932 (2009). The voluntariness of any consent depends on the totality of the circumstances, and the State bears the burden to demonstrate that consent was voluntary. *Davis*, 398 Ill. App. 3d at 956.

¶ 27 In this case, the issue of whether defendant's wife consented depends upon what happened during the exchange between her and the officers at the door. In assessing the evidence regarding a motion to suppress, we defer to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence. *People v. Almond*, 2015 IL 113817, ¶ 55. Such deference recognizes that the trial court is in a superior position to determine and weigh the witnesses' credibility, observe their demeanor, and resolve any conflicts in their testimony. *People v. Richardson*, 234 Ill. 2d 233, 251 (2009).

¶ 28 Here, the trial court expressly found that defendant's wife was credible. As noted, that finding was keenly within the province of the trial court, and the record does not provide any basis for this court to question it.

¶ 29 Additionally, the court found that there were, as described by defendant's wife, both an interior door and a storm door. That finding was not against the manifest weight of the evidence, as it was based on defendant's wife's testimony, which the court found credible.

¶ 30 Applying the facts to the question of whether defendant's wife consented to the officers' entry, we conclude that she did not. She told the officers repeatedly that she and defendant did

not need help, that the officers did not need to be there, and that they could leave. Moreover, she did so mostly through a closed storm door. Although at one point she opened the storm door slightly, she did so only to facilitate communication between her and the officers. The record does not show that she did so as a gesture for the officers to come inside. To the contrary, when she did crack open the door, it was Deputy Hiatt who opened the door farther and walked in. Although defendant's wife was polite, that alone did not support a reasonable conclusion that she, either indirectly or impliedly, was inviting the officers in. Under the facts, as found by the trial court, the State failed to meet its burden of establishing that defendant's wife consented to the entry into the home. Thus, the court correctly ruled that the warrantless entry was not justified by consent.

¶ 31     The State's reliance on *People v. Adams*, 394 Ill. App. 3d 217 (2009), and *People v. Lozano*, 316 Ill. App. 3d 505 (2000), is misplaced. In *Adams*, the finding of consent was premised upon someone answering the door, pointing in the direction of the defendant, and stepping aside, which the court found to equal saying " 'come in.' " *Adams*, 394 Ill. App. 3d at 220. Similarly, the evidence in *Lozano* established that the defendant opened the door to the police and stepped aside. *Lozano*, 316 Ill. App. 3d at 511. In our case, defendant's wife did not step away from an open door or otherwise intimate that it was okay for the officers to come in. Thus, neither *Adams* nor *Lozano* supports a finding of consent under the facts of this case.

¶ 32     We next address whether the warrantless entry was justified by the need to provide emergency aid. A warrant is not required for an entry made for the purpose of providing emergency aid. *People v. Lomax*, 2012 IL App (1st) 103016, ¶ 29. Under that exception, no warrant is needed to enter and search a home when the police have a reasonable belief that they need to act immediately to provide aid to a person. *Lomax*, 2012 Il App (1st) 103016, ¶ 29.

¶ 33     There is a two-part test to determine whether the emergency-aid exception applies. *People v. Ferral*, 397 Ill. App. 3d 697, 705 (2009).   First, the police must have reasonable grounds to believe that there is an emergency at hand.  *Ferral*, 397 Ill. App. 3d at 705.  Second, they must have some reasonable basis, approaching probable cause, to connect the emergency with the area entered or searched.  *Ferral*, 397 Ill. App. 3d at 705.   An assessment of the reasonableness of an officer's belief is objective and is based on the facts known to the officer when he entered or searched.  *Ferral*, 397 Ill. App. 3d at 705.  Emergency situations include instances where someone might be injured or threatened with injury.  *Brigham City, Utah v. Stuart*, 547 U.S. 398, 406 (2006).

¶ 34     Here, relying on the emergency-aid exception, the State identifies, as the need for aid, defendant's having been in an automobile accident and having been exposed for over an hour to extremely inclement weather.  Neither circumstance, however, constituted, at the time of the entry into the home, an emergency requiring the police to provide aid.

¶ 35     Although the accident caused extensive damage to defendant's vehicle, Deputy Diefenderfer did not see any blood or other signs of injury at the scene.  Additionally, the officers knew that defendant had walked nearly two miles in arduous conditions, which indicated a lack of serious injury.  More importantly, defendant had safely returned to his home and was under the care of his wife by the time the officers arrived.  It was not reasonable to conclude that defendant needed aid when his wife was providing it.  If he did need aid from the officers, his wife would not have persisted in telling the officers that he was fine and that he did not need medical help.  Indeed, to the extent that defendant had needed aid, any emergency in that regard had clearly dissipated.  Having received assurances from defendant's wife that he was being tended to, it was not reasonable for the officers to believe that they needed to enter the home to

provide emergency aid. See *People v. Krueger*, 208 Ill. App. 3d 897, 908 (1991) (police had no reason to believe that there was a need for emergency aid where the police knew that the defendant was home sleeping and a neighbor told them that the defendant was fine); see also *State v. Flegel*, 485 N.W.2d 210, 214 (S.D. 1992) (no need for emergency aid where the officer contacted the defendant's father after a traffic accident and the father stated that he had checked on the defendant and that the defendant had only a bump on his head).

¶ 36    Likewise, defendant's exposure to the weather did not constitute an emergency justifying the warrantless entry.  It was undisputed that defendant was exposed to the extreme cold for about an hour.  However, he had returned to the warmth of his home and was being cared for by his wife.  Although defendant's exposure to the cold might have constituted an emergency before he made his way home, any such emergency ended once he arrived there.  Nor does the record show that, from his exposure to the cold, defendant was suffering any lingering effects that constituted an emergency.  Snowy pants and red skin, common among school children at winter play, do not reflect typically a need for immediate medical assistance.  Therefore, the officers had no reason to believe that there was a need for emergency aid based on defendant's having been exposed to the weather.

¶ 37    The officers had no warrant to enter defendant's home.  Because there was neither consent nor a need for emergency aid, the warrantless entry into the home was unconstitutional. Thus, the trial court properly granted defendant's motion to suppress.

¶ 38    Having held that the officers' entry into defendant's home was unlawful, we turn to the trial court's ruling on the petition.  A hearing on a petition to rescind is civil, and a defendant has the burden of establishing a *prima facie* case for the rescission.  *People v. Feddor*, 355 Ill. App. 3d 325, 329 (2005).  The burden then shifts to the State to present evidence justifying the

suspension. *Feddor*, 355 Ill. App. 3d at 329. A defendant may establish that rescission is appropriate if his suspension was the result of an invalid arrest. *Feddor*, 355 Ill. App. 3d at 329 (citing *Krueger*, 208 Ill. App. 3d at 903-04). A warrantless, in-home arrest, which is presumptively unreasonable, is considered invalid unless it is justified by the exigencies of the situation. *Feddor*, 355 Ill. App. 3d at 329. Therefore, a suspension that results from an unlawful entry into the home must be rescinded. *Feddor*, 355 Ill. App. 3d at 332.

¶ 39 In this case, there are two bases that support the trial court's granting of the petition: (1) the absence of probable cause to support the DUI arrest; and (2) the unlawful entry itself.

¶ 40 Probable cause to arrest exists when the totality of the facts known to the officer when he makes the arrest are sufficient to lead a reasonable person to believe that the arrestee has committed an offense. *Wear*, 229 Ill. 2d at 563-64. Probable cause is based on the factual and practical considerations of everyday life upon which reasonable, prudent people, not legal technicians, act. *Wear*, 229 Ill. 2d at 564. It is more than a mere suspicion (*People v. Wingren*, 167 Ill. App. 3d 313, 320 (1988)) but less than proof beyond a reasonable doubt (*Wear*, 229 Ill. 2d at 564).

¶ 41 Here, without the evidence unlawfully gathered in the home, the only evidence of probable cause to believe that defendant had driven under the influence was that he had been in an accident and that there was an open beer can in his vehicle. The State does not contend that this was sufficient to support a finding of probable cause to arrest for DUI. We agree. Therefore, the DUI arrest was unlawful, and rescission was proper on that basis. See 625 ILCS 5/2-118.1 (West 2014).

¶ 42 Even if there had been probable cause independent of that developed after the entry into the home, rescission was nonetheless proper, because the entry into the home, which led to

defendant's arrest for DUI, was unlawful.  See *Feddor*, 355 Ill. App. 3d at 332.  Therefore, we affirm the rescission on that basis as well.[1]

¶ 43                                     III. CONCLUSION

¶ 44    For the reasons stated, we affirm the judgment of the circuit court of De Kalb County granting defendant's motion to suppress and his petition to rescind his statutory summary suspension.

¶ 45    Affirmed.

---

[1] We may affirm the judgment on any basis supported by the record.  See *People v. Lee*, 2016 IL App (2d) 150359, ¶ 14.